# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 27, 2013

No. 11-31205

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

KENRIC RODNEY,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:10-CR-102-1

Before STEWART, Chief Judge, and DAVIS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant challenges his sentence following his conviction for two counts of distributing 50 or more grams of crack cocaine and one count of conspiring to possess 5 or more kilograms of powder cocaine, 280 or more grams of crack cocaine, and a quantity of heroin. He was sentenced based upon an aggregate offense drug quantity of 5 or more kilograms of powder cocaine and 380 or more grams of crack cocaine, enhanced in part by the sentencing court's determination that the defendant maintained a premises for distributing drugs.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-31205

On appeal, Defendant-Appellant contests the sufficiency of the evidence supporting the drug quantities, the sentencing court's aggregation of his drug offense quantities, and the application of the "maintaining a premises" sentencing enhancement. Because the record supports the jury's quantity findings and the sentencing enhancement, and because the aggregation of the separate drug offense quantities was not clearly erroneous, we AFFIRM.

I.

At some point prior to October 2006, a New Orleans drug gang gained a foothold in the Hoffman Triangle, a neighborhood in central New Orleans. Known as "3NG," the drug gang adopted its name from the area in which it conducted its operations, the intersection of Third Street and South Galvez Street and the surrounding area. In October 2008, the Drug Enforcement Administration ("DEA") received information suggesting that a potential leader of the 3NG drug trafficking organization had been identified: Kenric Rodney ("Rodney"). Based on its initial investigation of Rodney, the DEA concluded that he was a key member of the organization.

On April 8, 2009, the DEA arranged a "chance" encounter between Rodney and Donyell Hatfield ("Hatfield"), an informant who had spent time with Rodney in federal prison. During their conversation, Hatfield complained that his drug supplier was overcharging him, and Rodney offered Hatfield his cell phone number. On April 20, 2009, Hatfield called Rodney to arrange a drug purchase, and Rodney told Hatfield to meet him at a nearby park. Wearing DEA monitoring devices and carrying purchase money, Hatfield arrived at the park as instructed. Hatfield then entered Rodney's car, and Rodney drove around the block before parking. From there, a DEA agent observed Rodney walk up a driveway, enter a shed, and then emerge from the shed a few minutes later and return to the parked car. In the car, Rodney gave Hatfield approximately 2.5 ounces of crack cocaine, and Hatfield gave Rodney $1,600. The two parted ways,

with Hatfield immediately meeting up with a DEA agent to turn over the drugs. A laboratory subsequently found the seized drugs to contain 60.8 grams of cocaine base.

Three days later, on April 23, 2009, Hatfield arranged a nearly identical transaction with Rodney. This time Hatfield parked his car near the driveway that Rodney had used during their previous deal. At the same time, Rodney was seen "milling around" near the shed at the end of the driveway before walking to and entering Hatfield's vehicle. Rodney then gave Hatfield another bag of approximately 2.5 ounces of crack cocaine, and Hatfield gave Rodney $1,800. After discussing the possibility of a future $8,000–$9,000 transaction involving a quarter kilogram of cocaine, the two parted ways again. The crack cocaine was immediately turned over to a DEA agent, and was subsequently determined by a laboratory to contain 62.7 grams of cocaine base.

On April 15, 2010, Rodney was indicted for his role in the drug activities of 3NG. The four-count indictment first alleged that Rodney conspired to distribute five kilograms or more of powder cocaine, fifty grams or more of cocaine base ("crack"), and a quantity of heroin and marijuana. Counts two and three of the indictment charged Rodney with the distribution of 50 grams or more of crack cocaine for the April 20, 2009 and April 23, 2009 Hatfield drug purchases. Count four alleged that Rodney distributed a quantity of powder cocaine on September 15, 2009.[1]

In September 2011, Rodney was tried by a jury on the four-count indictment. On a special verdict form permitting the jury to determine the quantity of cocaine involved, the jury found Rodney guilty of: conspiring to

---

[1] A second suspected 3NG leader, Derrick Fleming, was also indicted on the same counts as Rodney. However, a jury acquitted Fleming of any role in the charged drug distributions and conspiracy, and his involvement in the matter is irrelevant for purposes of this appeal.

No. 11-31205

distribute 5 or more kilograms of powder cocaine, 50 grams or more of crack, and a quantity of heroin, but not marijuana (Count 1); and distributing 50 or more grams of crack on April 20, 2009 and April 23, 2009 (Counts 2–3). The jury found Rodney not guilty of the fourth count, distribution of a quantity of cocaine on September 15, 2009. Rodney immediately filed a motion for a new trial, or in the alternative, a motion for a judgment of acquittal, which the district court denied.

At sentencing, the probation officer relied upon the jury's determinations of drug quantities and calculated Rodney's base offense level at 32. The probation officer also recommended a two-level enhancement under United States Sentencing Guidelines § 2D1.1(b)(12) for "maintain[ing] a premises for the purpose of . . . distributing a controlled substance." The "premises" referred to by the Presentence Report ("PSR") was the shed that Rodney accessed just prior to the April 20, 2009 drug deal and that he again appeared to access just prior to the April 23, 2009 drug deal. Rodney objected to the PSR, arguing that he did not maintain the shed or any such premises for the distribution of drugs as alleged. The sentencing judge overruled the objection, concluding that because the "testimony established that the Defendant had unimpeded access to the shed and was observed retrieving drugs from it on multiple occasions," the two-point sentence enhancement was appropriate. The district court imposed sentences of 365 months for each of Rodney's three convictions, to be served concurrently. Rodney now appeals.

II.

Rodney moved for a judgment of acquittal at the close of the Government's case-in-chief and again after the close of evidence. "This court reviews the district court's denial of a motion for acquittal *de novo*."[2]  *United States v.*

---

[2]  While Rodney moved for a judgment of acquittal based upon multiple objections to the evidence and trial procedure, he never based his objections upon the insufficiency of evidence relating to drug quantities. Therefore, the appropriate standard of review is arguably

No. 11-31205

*Vasquez*, 677 F.3d 685, 692 (5th Cir. 2012). A motion for acquittal should be granted if the Government fails to present evidence sufficient for a reasonable jury to have found that each essential element of the offense was established beyond a reasonable doubt. *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998). This court considers the evidence in the light most favorable to the verdict. *Vasquez*, 677 F.3d at 692.

As to the district court's interpretation and application of the sentencing guidelines, we review its legal conclusions de novo. *United States v. Conner*, 537 F.3d 480, 489 (5th Cir. 2008). We review corresponding factual findings for clear error. *Id*. However, where the defendant fails to raise an issue in the trial court, we review the lower court's application of the sentencing guidelines for plain error. FED. R. CRIM. P. 52(b); *United States v. Arviso-Mata*, 442 F.3d 382, 384 (5th Cir. 2006).

III.

A.

Rodney first argues that the evidence presented at trial was insufficient to support the jury's finding that the conspiracy to distribute and possess controlled substances of which he was convicted involved 5 or more kilograms of powder cocaine and 280 or more grams of crack cocaine. Because the only crack cocaine actually seized by DEA agents during its investigation was the 122.5 grams attributable to Rodney's dealings with Hatfield, Rodney contends that 122.5 grams is the maximum amount of crack for which he may be convicted and sentenced under the conspiracy count. Rodney likewise argues that the only powder cocaine actually seized by DEA agents amounted to 28.1

---

clear error. *See United States v. Delgado*, 672 F.3d 320, 330–31 (5th Cir. 2012) (en banc). Nonetheless, because we affirm the jury's factual findings even under the less stringent de novo review, we decline to address this argument.

grams, and therefore his conspiracy conviction cannot be premised on the greater amount of 5 kilograms.

Because the quantity of drugs involved increases the maximum possible penalty for the conspiracy in this case, the drug quantity must be established by the Government beyond a reasonable doubt.[3] *See United States v. Turner*, 319 F.3d 716, 721–22 (5th Cir. 2003); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Although the Government must prove the quantity of drugs involved in the conspiracy, there is no requirement that the requisite quantity of drugs actually be seized by the Government. *See Turner*, 319 F.3d at 722–23. A conspiracy conviction is thus supported by mere proof of an agreement involving drugs, and does not require actual possession and seizure of the drugs. *See United States v. Valdez*, 453 F.3d 252, 257 (5th Cir. 2006). Furthermore, the Government does not have to prove that the amount of drugs is attributable to Rodney individually. "[T]he government need only allege and prove to the jury the [quantity of drugs involved] *for the conspiracy as a whole*." *Turner*, 319 F.3d at 722 (emphasis in original) (quoting *Derman v. United States*, 298 F.3d 34, 43 (1st Cir. 2002)).

Rodney alternatively argues that even considering the evidence of additional drug quantities not seized by the Government, there is insufficient evidence to support the jury's finding that the conspiracy involved 5 or more kilograms of powder cocaine and 280 or more grams of crack cocaine. According to Rodney, there is at most evidence of approximately 2 kilograms of powder cocaine and 122.5 grams of crack cocaine.

---

[3] "To prove conspiracy to possess and distribute a controlled substance, the government must show beyond a reasonable doubt (1) the existence of an agreement between two or more persons to violate narcotics laws; (2) the defendant's knowledge of the agreement; and (3) his voluntary participation in the conspiracy." *United States v. Valdez*, 453 F.3d 252, 256–57 (5th Cir. 2006). Rodney has not challenged the jury's finding that the Government has satisfied the general elements of a conspiracy charge.

However, this assertion is contradicted by the trial record and testimony. Affiliates of Rodney testified that 3NG was responsible for the distribution of a substantial amount of powder and crack cocaine and that Rodney was 3NG's de facto leader. Testimony at trial established that Rodney personally supplied one street dealer with three kilograms of powder cocaine and directed the delivery of a fourth kilogram to the same dealer. The jury also heard testimony that in early 2008, Rodney was seen counting out $80,000 in cash earned from dealing drugs, roughly the equivalent value of four kilograms of cocaine. Another associate of Rodney testified that Rodney directed the transport of kilogram quantities of cocaine from Houston to New Orleans. Still more testimony identified Rodney as the one who supervised 3NG's systematic manufacture and distribution of crack cocaine via a network of multiple street level dealers. Despite the significant quantities of powder cocaine connected to Rodney, one of Rodney's associates testified that it was crack cocaine that 3NG was primarily engaged in distributing. According to trial testimony, even 3NG's "*small* street level" dealers distributed crack daily in three- and six-gram quantities. Moreover, the sizeable quantity of 122.5 grams which Rodney indisputably sold to Hatfield in just two transactions suggests that the volume represented by Rodney's overall drug network easily surpassed the relatively low 280-gram threshold necessary to support the jury's verdict.

Although Rodney argues that this evidence is tenuous and unreliable, he has offered no evidence or caselaw to support his assertion. Rather, we have previously said that in a conspiracy, the "agreement, a defendant's guilty knowledge and a defendant's participation in the conspiracy all may be inferred from the development and collocation of circumstances." *Valdez*, 453 F.3d at 257 (quoting *United States v. Lentz*, 823 F.2d 867, 868 (5th Cir. 1987)). Competent evidence includes the sworn testimony of witnesses and even coconspirators, because "[t]estimony is incredible as a matter of law only if it relates to facts that

No. 11-31205

the witness could not possibly have observed or to events which could not have occurred under the laws of nature." *Id.* (quoting *United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir.1994)). Each Government witness was subject to cross-examination by Rodney at trial, and there is no assertion that their collective testimony rose to this requisite level of incredibility. Because it is the jury's prerogative to determine whether or not to credit competent testimony, we decline to disturb its determination that the conspiracy in which Rodney participated involved at least 5 kilograms of powder cocaine and 280 grams of crack cocaine.[4]

### B.

Rodney next argues that his case must be remanded for resentencing because his original sentence was premised upon the erroneous aggregation of drug quantities in his PSR. Specifically, Rodney's sentence was based upon the determination that the total quantity of crack cocaine involved in his offenses was 380 grams. This amount was obtained by adding the 280 grams for which the jury found Rodney guilty of conspiring to distribute (Count 1) to the 100 grams the jury found Rodney guilty of distributing to Hatfield (Counts 2–3). Rodney contends that this aggregation is potentially erroneous, as the same 100 grams of crack cocaine for which Rodney was found guilty of distributing could have been used to reach the 280-gram quantity for which he was found guilty in his conspiracy charge.

---

[4] Rodney also argues that his case should be remanded for resentencing, because his original sentence was premised on the unsubstantiated drug quantity finding of the jury. However, because we conclude that the jury's findings regarding drug quantities are supported by the evidence, the sentencing judge's reliance upon those same findings was not improper. *See United States v. Cantu-Ramirez*, 669 F.3d 619, 629 (5th Cir. 2012) (reasoning that evidence sufficient to satisfy Government's burden of proving guilt is sufficient to satisfy Government's lower burden of proof at sentencing); *see also Valdez*, 453 F.3d at 268 (holding that a sentencing judge may estimate drug quantity "from any information that has sufficient indicia of reliability to support its probable accuracy") (internal quotation marks omitted).

No. 11-31205

Because Rodney did not raise this issue below, we review the lower court's application of the sentencing guidelines for plain error. FED. R. CRIM. P. 52(b); *Arviso-Mata*, 442 F.3d at 384. Under plain error review, we are concerned only with an error that is obvious and affects substantial rights, "which in the ordinary case means [the defendant] must demonstrate that it 'affected the outcome of the district court proceedings.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). Moreover, "the [reviewing] court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 736).

In the instant case, it is not clear that there was an error, that any error was obvious, or that any such error affected substantial rights. Rodney was separately indicted for and convicted of the offenses of conspiracy to distribute crack cocaine and distribution of crack cocaine. Rodney has cited no caselaw recognizing the impropriety of aggregating a conspiracy charge quantity with a distribution charge quantity in this context.[5] Even if we were to determine that such a drug quantity calculation methodology was flawed, Rodney's substantial rights were unaffected. This is because the sentencing range for 280 grams of crack cocaine plus 5 kilograms of powder cocaine is the same as the sentencing range for 380 grams of crack cocaine plus 5 kilograms of powder cocaine.[6]

---

[5] Although it arguably refers to separate factual predicates, U.S.S.G. § 2D1.1 cmt. n.12 states in relevant part, "If the offense involved both a substantive drug offense and an attempt or conspiracy (*e.g.*, sale of five grams of heroin and an attempt to sell an additional ten grams of heroin) the total quantity involved shall be aggregated to determine the scale of the offense."

[6] U.S.S.G.§ 2D1.1 cmt. n.10(B) provides that where a defendant's offense encompasses multiple drugs, the sentencing judge is to "convert each of the drugs to its marihuana equivalent, add the quantities, and look up the total in the Drug Quantity Table to obtain the combined offense level." Turning to the Drug Quantity Table, 280 and 380 grams of crack cocaine equate to 999 kilograms and 1356 kilograms of marijuana, respectively. *See* U.S.S.G.

No. 11-31205

Moreover, the sentencing court is free to find that a greater quantity of drugs was involved in the offense than found by the jury, if that finding is supported by a preponderance of the evidence and does not increase the sentence beyond the statutory maximum provided for by the jury's finding. *See Cantu-Ramirez*, 669 F.3d at 629; *Apprendi*, 530 U.S. at 490.[7] In other words, where reliable evidence exists, the sentencing court may reasonably extrapolate the involvement of a drug quantity in excess of the jury's finding.[8] By adopting the PSR's findings, the district court in effect made such a finding. The testimony regarding Rodney's level of involvement in the 3NG drug network and the network's scale of operation supports the greater 380-gram drug quantity calculation. Thus, the record makes it clear that the substantial rights of Rodney and the integrity of the judicial process have not been impaired. *See, e.g., United States v. Chavez-Flores*, 404 F. App'x 312, 316 (10th Cir. 2010) (finding that erroneous double-counting of drug quantity for purposes of sentencing did not constitute plain error where other evidence supported a much higher drug quantity calculation).

---

§ 2D1.1 cmt. n.10(D). When aggregated with the marijuana equivalent of the 5 kilograms of cocaine powder (1000 kilograms), the total drug quantity yielded by the addition of the two potential crack cocaine totals is 1,999 kilograms and 2,356 kilograms of marijuana equivalent. *See id.* Both of these totals fall within the same 1,000–3,000 kilogram marijuana equivalent sentencing range, resulting in the same Level 32 base offense level for Rodney regardless of which crack cocaine quantity is relied upon. *See* U.S.S.G. § 2D1.1(c)(4).

[7] "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

[8] *See* U.S.S.G. § 2D1.1 cmt. n.12 ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance."); *United States v. Betancourt*, 422 F.3d 240, 246–47 (5th Cir. 2005) (finding that "district judge can make an estimate" of "the amount of drugs attributable to a defendant for purposes of sentencing").

C.

Rodney next argues that the sentencing judge erred by finding that he maintained a premises for distributing drugs, which resulted in a two-point enhancement of Rodney's sentence. Because Rodney raised this objection before the district court, we review the lower court's application of the sentencing guidelines de novo and its factual findings for clear error. *See Conner*, 537 F.3d at 489.

The "premises" relied upon by the trial court in applying the enhancement was the run-down shed which Rodney was seen accessing during his first crack transaction with Hatfield. Although Rodney was not seen actually accessing the shed during his second crack transaction with Hatfield, no other reasonable explanation was offered for his being in the shed's immediate vicinity just before transferring the crack to Hatfield. Overruling Rodney's objection at sentencing, the trial court found that the "testimony established that [Rodney] had unimpeded access to the shed and was observed retrieving drugs from it on multiple occasions. Also, [Rodney] stored, packaged, and retrieved drugs from the shed, and controlled the activities at the shed."

U.S.S.G. § 2D1.1(b)(12) provides, "If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase [the sentence] by 2 levels." According to the guidelines commentary, "Among the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1 cmt. n.28. The commentary makes clear that a "premises" need not be an actual house or residence, but may be a "building, room, or enclosure." *Id.*

Immediately before the two Rodney crack transactions observed by law enforcement, Rodney accessed the shed on one occasion and appeared to access

No. 11-31205

the shed on the other occasion. Unlike a residence or house, the shed was apparently a run-down structure for which Rodney had no legitimate use, and Rodney has offered no innocent explanation for his close connection to the shed just prior to large crack cocaine deals. While Rodney might not have owned or rented the shed, he had unimpeded access to the shed and used it as he wished.

This evidence supports the inference that Rodney at least temporarily used the shed to store and package drugs for distribution. The district court did not clearly err in finding that Rodney maintained the premises to distribute drugs. *See United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995). ("Generally, a PSR bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing. The defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it."). *See also United States v. Sandoval-Chavez*, 477 F. App'x 154 (5th Cir. 2012).

## IV.

For the reasons stated above, the judgment and sentence of the district court is AFFIRMED.