In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1356

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ACASIO SANCHEZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-cr-00576— **Robert M. Dow, Jr.**, *Judge.*

ARGUED NOVEMBER 18 2015 — DECIDED JANUARY 13, 2016

Before POSNER, MANION, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* Acasio Sanchez pleaded guilty to conspiring to possess with intent to distribute and to distribute heroin and cocaine, 21 U.S.C. §§ 846, 841(a)(1), and was sentenced below the guidelines range to 40 months' imprisonment. Sanchez argues that the district court erred by applying a two-level enhancement for "maintain[ing] a premise for the purposes of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). But the district court

properly found that the enhancement was warranted and explained that it would have imposed the same sentence regardless. We affirm his sentence.

In July 2012 one of Sanchez's childhood friends offered him $1,500 per month to store drugs in his house. Sanchez agreed and made the drugs available when others came to pick them up. Sanchez received between four and twenty kilograms of heroin and cocaine every few weeks. The drugs were kept locked in a closet on the back porch of his residence. Only Sanchez and his girlfriend had keys. When Sanchez's friend needed the drugs, he would call Sanchez and tell him how much was needed and Sanchez would meet the friend or another coconspirator in his garage to hand over the drugs. Over the course of a year Sanchez stored at least 30 kilograms of heroin and received $18,000 as payment for his service as a conduit. The investigating agent believed that Sanchez may not have known the type of drug that he was storing. Sanchez was charged with conspiring to possess with intent to distribute and to distribute heroin and cocaine, distributing heroin, and possessing with intent to distribute heroin. He pleaded guilty to the conspiracy count and in exchange the government agreed to drop the other charges. In the plea agreement the government and Sanchez agreed that they could each make arguments about whether the § 2D1.1(b)(12) enhancement should apply.

A probation officer recommended applying the enhancement because Sanchez's residence was used as the drop-off, pick-up, and storage site for the drugs for a year, and calculated Sanchez's guidelines range as 135 to 168 months based on a total offense level of 33 and a criminal history category of I.

There was no statutory minimum because he qualified for the safety valve. In the presentence report, the probation officer further noted that Sanchez, who was 70 years old at the time, has a number of health problems, including cirrhosis of the liver, water retention, arthritis, stomach ulcers, elevated levels of ammonia in his blood, and heart disease.

Defense counsel argued that the § 2D1.1(b)(12) enhancement should not apply because the primary purpose of Sanchez's residence was not drug distribution. He emphasized that in other cases the "primary purpose" requirement of the guideline was met by additional facts, such as when the defendants also "maintained business records, used a child to deliver narcotics, settled financial transactions or accepted payment" on the premises. Sanchez, however, was merely providing storage and this was not enough to make drug distribution the primary purpose of his house. Counsel concluded by requesting probation rather than a term of imprisonment because of Sanchez's age, poor health, reliance on family members for help with his care, and limited role in the overall conspiracy. At the hearing, Sanchez's girlfriend and the girlfriend's daughter testified that Sanchez was a caring man, who helped raise the daughter, and made a single mistake.

The government argued for the two-level enhancement because Sanchez, as a renter, had a possessory interest in the house, and the consistent delivery, concealment, and pick-up of drugs meant that storing drugs was a "primary use of the residence."

The district court agreed with the government and probation officer that the § 2D1.1(b)(12) enhancement should apply because Sanchez "allowed his residence to be used as a stash house on a constant basis for a substantial sum of money." Although storing drugs was not the sole purpose of the residence, the district court explained that it was one of the primary purposes. The district court acknowledged that in other enhancement cases defendants had provided more than storage. And unlike those cases, the district court agreed that Sanchez did not maintain business records, accept payment for drug sales at his house, transport or set the price of the drugs, and he may not have known the type of drugs he was storing. But, importantly, Sanchez had a possessory interest and controlled activities in the house. The district court also explained that the enhancement made "absolutely no difference" because it would have imposed the same 40-month, below-guidelines sentence based on Sanchez's age and poor health.

On appeal Sanchez argues that his guidelines calculation was wrong because the cases where the § 2D1.1(b)(12) enhancement applied have involved more than mere storage, yet this was Sanchez's lone role in the conspiracy. He emphasizes that in the typical case, the defendant has "tools of the [drug-trafficking] trade," but he did not keep scales, guns, ammunition, large quantities of cash, or business records at his house. His role, he says, was minimal; he did not even know the type of drug he was storing. He did not give instructions about storing the drugs, dictate the terms of their transportation or sale, bring customers to the house, or have employees for selling the drugs. Additionally, he lacked sufficient control

over the premises for the enhancement to apply because he did not direct "the activities of the home's co-residents [or deny] their ability to access portions of the residence." His girlfriend also had a key to the closet and this area was separated from the main house by a locked door.

Although other cases have found that certain facts justified the enhancement, this "does not mean that those facts *necessarily* must be shown in every case." *United States v. Johnson*, 737 F.3d 444, 448 (6th Cir. 2013). The guideline specifically covers storage, *see* U.S.S.G. § 2D1.1(b)(12) cmt. n.17 (2014), and while storing additional tools of the drug-trafficking trade can be "indicia that drug trafficking was the principal use of the premises," it is not the only relevant inquiry, *United States v. Flores-Olague*, 717 F.3d 526, 533 (7th Cir. 2013) (citing *United States v. Miller*, 698 F.3d 699, 706–07 (8th Cir. 2012)). Additionally, a premise can have more than one primary use (drug distribution and residence), and, as long as it is more than "incidental or collateral," drug distribution does not have to be the "sole purpose." U.S.S.G. § 2D1.1(b)(12) cmt. n.17 (2014); *see United States v. Bell*, 766 F.3d 634, 638 (6th Cir. 2014); *Miller*, 698 F.3d at 706–07. Moreover, it does not matter that Sanchez did not have a bigger role in the conspiracy; the use of his home was still integral. *See Johnson*, 737 F.3d at 448–49. And he did not have to control access to the closet to the exclusion of everyone else, such as his girlfriend, for the enhancement to apply. *See United States v. Jones*, 778 F.3d 375, 385 (1st Cir. 2015). Finally, the inside porch is part of the house even if it is separated from the main living area. *See Bell*, 766 F.3d at 637. The district court properly focused on the fact that Sanchez received large drug deliveries every few weeks, was paid a

large sum for storage, and controlled access to the drugs when deciding that one of the primary purposes of his home was drug distribution.

In any event, any error was harmless because the district court explicitly stated that it would have imposed the same sentence without the two-level increase. *See United States v. Rabiu*, 721 F.3d 467, 470–71 (7th Cir. 2013); *United States v. Foster*, 701 F.3d 1142, 1157–58 (7th Cir. 2012). And, in doing so, the district court provided "a detailed explanation of the basis for the parallel result," not merely a conclusory statement. *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009); *see United States v. Hill*, 645 F.3d 900, 912 (7th Cir. 2011). Namely, the district court said that Sanchez's age and health warranted a sentence far below the guideline range.

AFFIRMED.