19-899
*United States v. McDowell*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of March, two thousand twenty.

Present:
> DEBRA ANN LIVINGSTON,
> MICHAEL H. PARK,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

———————————————————————

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                    19-899

DOMINIQUE MCDOWELL, aka DOMO,

> *Defendant-Appellant*.

———————————————————————

| | |
|---|---|
| For Appellee: | KATHERINE A. GREGORY, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, NY |
| For Defendant-Appellant: | TIMOTHY P. MURPHY, Assistant Federal Public Defender, Federal Public Defender's Office, Buffalo, NY |

1

Appeal from a judgment of the United States District Court for the Western District of New York (Arcara, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the matter is **REMANDED**, and the district court is instructed to **VACATE** the sentence and resentence in accordance with the analysis herein.

Dominique McDowell appeals from a judgment imposed on March 22, 2019, sentencing him to forty-two months of imprisonment for possession with intent to distribute, and distribution of, butyryl fentanyl and U-47700[1] in violation of 21 U.S.C. § 841. The district court applied a two-level enhancement for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance," pursuant to U.S.S.G. § 2D1.1(b)(12) ("drug-premises enhancement"). The sole issue on appeal is whether the application of that enhancement was appropriate. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review a district court's interpretation and application of the Guidelines *de novo*, and its factual findings for clear error." *United States v. Pristell*, 941 F.3d 44, 49 (2d Cir. 2019) (citations omitted). The district court found that McDowell "had a[] possessory interest in the room, as a guest of his mother, and exerted control over the room and he used it for safekeeping of his controlled substances, packaging materials and sale proceeds." App'x 119–20. Based on these factual findings, the court concluded that McDowell maintained the bedroom in his mother's home for the purpose of manufacturing or distributing a controlled substance. We conclude that,

---

[1] Both butyryl fentanyl and U-47700 are opiates and Schedule I controlled substances. *See* 21 C.F.R. § 1308.11(b)(20), (70).

on the present record, the district court's application of the drug-premises enhancement was improper.

In order to apply § 2D1.1(b)(12), a court must conclude that the defendant (1) "maintained a premises" (2) "for the purpose of manufacturing and distributing a controlled substance." We find no error in the district court's determination as to the first of these two parts. McDowell does not dispute that he lived in the room where the drug proceeds and his clothing were found. Moreover, he regularly came and went from the residence, indicating that he had free access to the premises. Accordingly, there was enough evidence to conclude that McDowell exercised a sufficient degree of control over his room to "maintain" it within the meaning of the drug-premises enhancement. *See* U.S.S.G. § 2D1.1, cmt. 17 ("Among the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises."); *see also United States v. Holley*, 638 F. App'x 93, 98 (2d Cir. 2016) (evidence established that defendant "controlled access to [an] apartment" based on the presence of his shoes, mail, and keys and defendant's "unrestricted access to the apartment"); *United States v. Carter*, 834 F.3d 259, 262–63 (3d Cir. 2016); *United States v. Jones*, 778 F.3d 375, 384 (1st Cir. 2015); *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013); *United States v. Flores-Olague*, 717 F.3d 526, 532 (7th Cir. 2013); *United States v. Miller*, 698 F.3d 699, 706 (8th Cir. 2012).

Nevertheless, the district court erred in concluding that the evidence established that McDowell's primary purpose in maintaining the premises was the distribution of narcotics and thereby warranted application of the drug-premises enhancement. In order to apply the drug-premises enhancement, manufacture or distribution of a controlled substance "must be one of the

defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." U.S.S.G. § 2D1.1, cmt. 17. But on the present record, McDowell's conduct amounted to mere "incidental or collateral use[]." *Id.* He consummated no drug transactions on the premises. The only drugs and proceeds found were in the pockets of his pants or shorts, indicating that his storage of those items was merely transient or incidental to his residing on the premises. While some "packaging materials" were found in McDowell's residence, the record offers no detail on what precisely those materials were or in what quantities they were present. And the record is devoid of evidence of other tools of the trade—such as firearms, scales, or cutting agents—or drug quantities more substantial than the approximately four grams of fentanyl found in McDowell's clothing. Moreover, McDowell worked as a manager at a fast-food restaurant at the time of his arrest, indicating that he was not wholly reliant on drug trafficking for income. *See United States v. Winfield*, 846 F.3d 241, 243 (7th Cir. 2017) (per curiam) (drug-related uses for premises not "incidental" where defendant's only source of income is drug sales); *see also United States v. Bell*, 766 F.3d 634, 637 (6th Cir. 2014); *Flores-Olague*, 717 F.3d at 534; *United States v. Sanchez*, 710 F.3d 724, 732 (7th Cir. 2013). Based on the present record, application of the drug-premises enhancement was simply not appropriate. *Cf. United States v. Cedeno-Martinez*, 791 F. App'x 272, 276 (2d Cir. 2019) (enhancement properly applied where cooperating witness traveled to defendant's residence to obtain drugs and wire communications along with GPS information indicated that defendant used residence to traffic drugs); *Holley*, 638 F. App'x at 98–99 (officers found multiple guns, bulletproof vests, "ammunition, a digital scale, Ziploc baggies, a glass beaker, boxes of baking soda (an ingredient commonly used to manufacture crack cocaine), 19.9 grams of cocaine base, 16 baggies containing a total of 2.4 grams of crack cocaine, and a Ziploc bag containing 82.2 ounces of marijuana");

4

*United States v. Murphy*, 901 F.3d 1185, 1192, 1195 (10th Cir. 2018) (over one pound of methamphetamine, digital scales, baggies, and surveillance cameras found); *United States v. Sanchez*, 810 F.3d 494, 495 (7th Cir. 2016) (defendant was paid $1,500 per month to store drugs and "received between four and twenty kilograms of heroin and cocaine every few weeks"); *Bell*, 766 F.3d at 637 ("The house contained the 'tools of the trade': a digital scale, drug-packaging materials, and police scanners[,] . . . 'a large sum of cash' in a safe—almost $4,000 . . . ."); *Johnson*, 737 F.3d at 447–48 (1200 pounds of marijuana over an eight-month period and a gun, $15,000 in cash, and a scale); *Sanchez*, 710 F.3d at 730 (storing up to 40 kilograms of cocaine at a time and using his residence "as a secure place to settle the financials").

Under these circumstances, we conclude that the district court erred in applying the drug-premises enhancement. We remand for the purpose of resentencing, expressing no view as to whether the enhancement might properly be applied based on evidence not now in the record.

\*     \*     \*

We have considered the government's remaining arguments and find them to be without merit. Accordingly, we **REMAND** to the district court, instructing that court to **VACATE** the sentence and resentence in accordance with this summary order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk