# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 13, 2024

Lyle W. Cayce
Clerk

———————

No. 23-11185

———————

United States of America,

*Plaintiff—Appellee,*

*versus*

Adrian Dantrell Wesley,

*Defendant—Appellant.*

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:22-CR-214-1

———————————————————

Before Smith, Clement, and Higginson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

Defendant-appellant Adrian Dantrell Wesley was convicted of possession with intent to distribute and, at sentencing, received a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining premises for the purpose of distributing a controlled substance. Wesley appeals the application of the enhancement on the basis that there was no evidence he possessed or controlled the premises. Because the undisputed facts establish that Wesley sold drugs from the residence multiple times, used the residence as a stash house, and had a key to the residence, we AFFIRM the district court's application of the premises enhancement.

No. 23-11185

## I.

In February 2022, the Fort Worth police received a tip about drug distribution taking place at 3005 Griggs Avenue, a single-family home located within Fort Worth. On June 17, 2022, a confidential informant for the Fort Worth police went to the Griggs Avenue house and asked to buy methamphetamine. Wesley met the informant at the home and sold the informant 7.8 grams of methamphetamine. Wesley also told the informant that he could sell him an ounce of methamphetamine at a later date. The next day, a Fort Worth police officer knocked on the door of the Griggs Avenue house. The officer observed a different individual—not Wesley—jump the fence and run from the house. The police obtained a warrant to search the house and discovered methamphetamine, crack cocaine, powder cocaine, and marijuana, along with three guns, a vehicle registration for a Nissan Altima, and mail addressed to someone other than Wesley. The police observed Wesley near the house on the day of the search but did not see him in the house.

On June 22, 2022, the informant returned to the residence with an undercover officer and observed Wesley in a Nissan Altima in the driveway. When the informant told Wesley he wanted to purchase the ounce of methamphetamine Wesley had mentioned on June 17, Wesley unlocked the front door of the house with a key and all three individuals entered the home, where Wesley retrieved the methamphetamine. The informant purchased the drugs, and then all three individuals exited the home; Wesley walked toward the Altima in the driveway.

On July 6, 2022, the police surveilled the Griggs Avenue home and witnessed Wesley participate in multiple suspected drug deals. When Wesley left the Griggs Avenue residence he was stopped by the police. The police arrested Wesley pursuant to an active warrant out of Tarrant County, Texas, then searched the car and discovered methamphetamine, powder cocaine, crack cocaine, marijuana, and a handgun.

No. 23-11185

A grand jury indicted Wesley on three counts of possession with intent to distribute based on the June 18, June 22, and July 6, 2022, sales and searches, as well as two counts of firearm possession.[1] The parties agreed to proceed with a bench trial on stipulated "facts necessary for conviction" on Count Three—possession with intent to distribute five grams or more of methamphetamine on June 22, 2022, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).[2] The court found Wesley guilty on Count Three.

Probation prepared a pre-sentence report (PSR) that calculated a total offense level of 36, including a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for "maintain[ing] a premises for the purpose of . . . distributing a controlled substance."[3] Wesley objected to the § 2D1.1(b)(12) enhancement, arguing that there was no evidence that he had a possessory interest in the residence or controlled access to it. He did not dispute the evidence that he used the Griggs Avenue premises for the purpose of distributing drugs, or that he could access the premises at-will. The probation officer rejected Wesley's arguments in an addendum to the PSR, pointing to evidence that Wesley "conducted three separate drug transactions from this residence (June 17, 22, and July 6, 2022), . . . was present nearby when the officers conducted the search on June 18, 2022 . . . [and] had a key to the residence and controlled access to the home." The addendum also explained that "the defendant resided at another home in Fort Worth, indicating he

---

[1] Counts One and Two correspond to the June 18 search, Count Three corresponds to the June 22 sale, and Counts Four and Five correspond to the July 6 sale and search.

[2] Correspondingly, the government agreed to move to dismiss the remaining counts at the conclusion of sentencing, which did occur.

[3] The original PSR stated: "The defendant was observed on multiple occasions distributing narcotics from the Griggs residence. Furthermore, the defendant was observed unlocking the front door, indicating he had access and control over the premises."

utilized the Griggs Avenue residence for the sole purpose of distributing narcotics."

At sentencing, the district court overruled the objection to the premises enhancement and adopted "as [its] final findings of fact the statements of fact made in the presentence report, subject to and including the changes and qualifications made by the addendum to the presentence report." Wesley's counsel pressed the objection a second time, stating, "I don't mean to make an argument that this wasn't a stash house, I think it's very clear that's what this house was . . . [but] the record is insufficient to say that Mr. Wesley maintained that premises." The district court responded that it had already considered and rejected the objection. This appeal followed.

## II.

"We review the district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error." *United States v. Duffey*, 92 F.4th 304, 309 (5th Cir.), *cert. granted sub nom. Hewitt v. United States*, 144 S. Ct. 2713 (2024). The application of § 2D1.1(b)(12) is a factual question that this court reviews for clear error. *United States v. Guzman-Reyes*, 853 F.3d 260, 263 (5th Cir. 2017). "The proponent of an adjustment to the defendant's base offense level bears the burden of establishing the factual predicate 'by a preponderance of the relevant and sufficiently reliable evidence.'" *United States v. Aguilar-Alonzo*, 944 F.3d 544, 549 (5th Cir. 2019) (quoting *United States v. Richardson*, 781 F.3d 237, 249 (5th Cir. 2015)). "[I]n determining whether an enhancement applies, a district court is permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well." *United States v. Ramos-Delgado*, 763 F.3d 398, 400 (5th Cir. 2014) (quoting *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006)). "In resolving any dispute concerning a factor important to the sentencing determination," the sentencing court

"may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a).

Generally, this court reviews sentencing decisions for reasonableness using a "bifurcated review process." *United States v. Nguyen*, 854 F.3d 276, 280 (5th Cir. 2017); *see Gall v. United States*, 552 U.S. 38, 51 (2007). First, this court examines "whether the district court committed any significant procedural error." *Nguyen*, 854 F.3d at 280. If there is no procedural error, this court then considers whether the sentence was substantively reasonable. *Id*. Here, Wesley's arguments go to procedural error in the application of § 2D1.1(b)(12); he makes no argument about the reasonableness of the sentence.

## III.

Section 2D1.1(b)(12) of the United States Sentencing Guidelines provides: "If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase [the base offense level] by 2 levels." The enhancement is appropriate if the defendant "knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." § 2D1.1 cmt. n.17. "Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." *Id*. "Among the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory

interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." *Id.*

Wesley admits his use of the residence to distribute drugs and does not offer any evidence that distribution was not his primary use for the Griggs Avenue property. Both parties agree that there is no record evidence that Wesley held a possessory interest in the Griggs Avenue home, and the record contains no evidence about the owner of the home or whether the home was used by others as a residence. The primary issue on appeal is whether the evidence supports a finding that Wesley "maintained" the premises as required for application of the enhancement.

This circuit has analyzed the applicability of § 2D1.1(b)(12) in several prior cases, although not all are precedential, and none is directly analogous to Wesley's use of the Griggs Avenue property. In *United States v. Guzman-Reyes*, Guzman used an auto shop for "storage of a controlled substance for the purpose of distribution," which was his "primary or principal use[] for the premises," and paid "the owner of the shop[] $1,000-worth of methamphetamine per month in exchange for use of the premises for the sole purpose of storing his drug supply there." 853 F.3d 260, 263–65 (5th Cir. 2017) (first alteration in original). We explained that "[a]lthough Guzman's name may not have been on a formal lease agreement or ownership documents . . . 'it would defy reason for a drug dealer to be able to evade application of the enhancement by the simple expedient of maintaining his stash house under someone else's name.'" *Id.* at 265 (quoting *United States v. Jones*, 778 F.3d 375, 385 (1st Cir. 2015)). We applied the same reasoning to affirm the use of the enhancement in *United States v. Moton*, where the defendant's name was on the utility bill. 951 F.3d 639, 646 (5th Cir. 2020).

In a similar vein, we upheld the application of a premises enhancement in *United States v. Johnson*, where the defendant "regularly used the

residence as a base for his drug trafficking, coming and going as he pleased." 723 F. App'x 251, 252 (5th Cir. 2018) (per curiam). The court in *Johnson* persuasively focused on the fact that Johnson "possessed a key to the residence and a key to a locked closet in a bedroom of the residence that he occupied when he was present" and so could control access to at least a portion of the residence even if he did not rent or own the premises. *Id.* In *United States v. Slider*, we affirmed the district court's application of § 2D1.1(b)(12) to a defendant who had lived in the home for three years despite never having ownership of the property, because "the record establishes that Slider had unrestricted access to the home." 833 F. App'x 587, 589 (5th Cir. 2021) (per curiam). And in *United States v. Wilson*, we affirmed the application of the enhancement because Wilson "had lived at the home for about a year . . . [and] was allowed to live there rent-free in exchange for distributing narcotics and conducting home repairs." 838 F. App'x 872, 873 (5th Cir. 2021) (per curiam).

We have also applied the enhancement to a defendant who twice accessed a "run-down shed" during drug deals. *United States v. Rodney*, 532 F. App'x 465, 472 (5th Cir. 2013) (per curiam). The court persuasively reasoned that although there was no evidence that Rodney owned the shed, "[u]nlike a residence or house, the shed was apparently a run-down structure for which Rodney had no legitimate use, and Rodney has offered no innocent explanation for his close connection to the shed just prior to large crack cocaine deals." *Id.* at 473. In support of applying the enhancement, we also focused on Rodney's "unimpeded access to the shed." *Id.*

Wesley argues that because "neither the Sentencing Commission nor Congress defined the verb 'maintain' as it appears in § 2D1.1(b)(12), this Court should interpret the word using its ordinary meaning at the time of enactment." "When the language of the guideline is unambiguous, the plain meaning of that language is controlling unless it creates an absurd result."

*United States v. Cortez-Gonzalez*, 929 F.3d 200, 203 (5th Cir. 2019) (quoting *United States v. Serfass*, 684 F.3d 548, 551 (5th Cir. 2012)). Wesley argues that we should look to legal dictionaries, pointing primarily to the 2009 edition of Black's Law Dictionary, which defines "maintain" as: "[t]o continue (something)," "[t]o continue in possession of (property, etc.)," "[t]o care for (property) for purposes of operational productivity or appearance," and "to engage in general repair and upkeep." *Maintain*, BLACK'S LAW DICTIONARY (9th ed. 2009). He urges this court to vacate the application of the enhancement on the basis that a defendant must "exercise supervisory control concerning access to the premises" in order to receive the enhancement. Wesley analogizes his situation to one where a teenager, neighbor, or family friend is given a key to a home but does not have the supervisory control necessary to "maintain" the home.

But adopting Wesley's reading of a "supervisory" element into the premises enhancement would create an additional test that is not required by the text of the enhancement and its commentary. This circuit's applications of § 2D1.1 focus instead on access and control over the premises, particularly unrestricted and exclusive access. Wesley's use of the Griggs Avenue home fits comfortably within the bounds of existing law. Wesley had a key, "distributed drugs alone" from the home without the aid of others, and was seen using the home multiple times. Other circuits, examining similar facts, have explained that "in many cases where the defendant did not own or rent the premises, but control was deemed to exist for purposes of § 2D1.1(b)(12), the defendant had a key to the premises." *United States v. Clark*, 665 F. App'x 298, 303 (4th Cir. 2016) (per curiam) (collecting cases); *United States v. Jones*, 778 F.3d 375, 384 (1st Cir. 2015) (applying premises enhancement when defendant had a key to the premises, could access the premises at will, and could sleep in the premises if he wished to); *see also United States v. Sanchez*, 810 F.3d 494, 497 (7th Cir. 2016) (applying enhancement where the

defendant's girlfriend also had a key). In addition to possessing a key, Wesley conducted drug deals at the Griggs Avenue home on June 17, 2022, June 22, 2022, and July 6, 2022, and "was present nearby" when law enforcement searched the residence on June 18, 2022. By Wesley's own dictionary definition of maintaining as "continuing" use, his repeated use of the premises qualifies.

Wesley's use of the home is analogous to the use of the shed in *Rodney*, where Rodney repeatedly accessed the premises during cocaine deals. 532 F. App'x at 473. There, we persuasively observed that Rodney's "unimpeded access to the shed," which had no other legitimate use, supported applying the enhancement, even when there was no evidence that Rodney was the sole user of the shed. *Id.* Notably, Wesley has not pointed to any evidence—and he presented no rebuttal evidence at sentencing—showing that his access to the premises was impeded by other individuals using the home. In *United States v. Lord*, we reversed the application of the premises enhancement to Michael Lord, who had worked with an acquaintance, Alhasnat Laghari, to create a Xanax manufacturing operation. 915 F.3d 1009, 1017 (5th Cir. 2019). Michael Lord and Laghari used a locked room in Laghari's father's shop to produce the pills. *Id.* at 1018. "Though Laghari had his own key and could open and use the room without his father's permission, Michael did not," and Michael seemingly needed Laghari to unlock the door in order to access the premises. *Id.* at 1022. "Michael went there only once, when Laghari permitted him access and worked in there with him." *Id.* The court, applying *Guzman-Reyes*, found the district court "d[id] not have any evidence that Michael could have gained or did gain 'unrestricted access to the premises.'" *Id.* (quoting *Guzman-Reyes*, 853 F.3d at 265). Unlike in *Lord*, here the undisputed evidence shows that Wesley was able to open and access the premises at will. In fact, Wesley's ability to lock the door gave him the ability to exclude

those without a key, and therefore he could at least partially control access to the premises.

Finally, Wesley's argument that his relationship to the Griggs Avenue home is like a neighbor or teen having a key to a family home is unavailing. The neighbor or teen would have access to a family's home contingent on the authority of the owner, and their activities within the home would be subject to limitations placed by the owner. Again, Wesley has offered no evidence that his access to the home and activities within the premises were limited, and the record shows that he could come and go as he pleased while openly using the premises for distribution.

This court reviews the district court's application of § 2D1.1(b)(12) for clear error—the question before us is "whether the district court's determination 'is plausible in light of the record read as a whole.'" *Guzman-Reyes*, 853 F.3d at 263 (quoting *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005)). Wesley has failed to show clear error in the district court's determination. The undisputed evidence shows that Wesley repeatedly used the premises to distribute drugs, and his counsel admitted before the district court that he used the residence as a "stash house." Under our case law interpreting § 2D1.1(b)(12), the district court's application of the sentencing enhancement to Wesley was entirely plausible.

* * *

For these reasons, we AFFIRM the district court's application of the § 2D1.1(b)(12) sentencing enhancement to Wesley.