# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-10387

United States Court of Appeals
Fifth Circuit

**FILED**

April 5, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

JESUS GUZMAN-REYES,

      Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before BARKSDALE, GRAVES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Jesus Guzman-Reyes appeals his sentence for possession with intent to distribute methamphetamine and illegal reentry into the United States. Specifically, Guzman challenges the district court's assessment of the U.S.S.G. § 2D1.1(b)(12) enhancement for maintaining a premises for the purpose of drug distribution, as well as the § 3B1.1(c) enhancement for Guzman's aggravating role in the offense. We affirm.

## I.

In August 2015, the Fort Worth Police Department received information from a confidential source that Guzman planned to deliver a large quantity of methamphetamine to a location in Arlington, Texas. Officers located Guzman's

No. 16-10387

car and began surveillance, following him to an auto shop. Police observed Guzman exiting his car and making a phone call. Shortly thereafter, a second person—later identified as John Campbell—arrived at the shop. Campbell greeted Guzman and unlocked the front door of the shop. The two then entered the building together. Guzman soon left the shop with a large bag, which he placed in his car, and then drove away. After officers initiated a traffic stop, a search of Guzman and his car revealed $3,600 in cash, several cellphones, a pistol, and multiple bags containing approximately 2,035.7 grams of methamphetamine. The officers learned that Guzman was from Mexico and that he had entered the United States illegally after a 2012 deportation, which itself followed convictions for illegal reentry and possession of a controlled substance.

Officers later returned to the auto shop to question Campbell, who stated that he was the owner of the shop and admitted that methamphetamine and firearms were stored inside. Campbell directed officers to the bottom desk drawer in his office, where they found a Tupperware container holding approximately 547.15 grams of methamphetamine. Officers located an additional 70.87 grams of methamphetamine in a second Tupperware container on a shelf above the desk. Officers also discovered eleven firearms in the shop, three of which had been reported stolen, and a large supply of ammunition. Campbell admitted that he stored methamphetamine for Guzman at the shop over the span of three months in exchange for about one ounce of methamphetamine per month, a value of approximately $1,000. According to Campbell, Guzman did not have keys to the shop, but contacted Campbell whenever he needed access.

In November 2015, Guzman pleaded guilty, without a plea agreement, to one count of possession with intent to distribute methamphetamine and one count of illegal reentry into the United States. For his methamphetamine

2

No. 16-10387

conviction, the Pre-sentence Report (PSR) applied a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purpose of distributing methamphetamine and a two-level enhancement under § 3B1.1(c) for Guzman's aggravating role in the offense. Guzman objected to both enhancements. The district court overruled both objections and sentenced Guzman to a total of 360 months of imprisonment, based on consecutive imprisonment terms of 240 months on the methamphetamine conviction and 120 months on the illegal-reentry conviction, the statutory maximums for each offense. The district court also imposed three years of supervised release. Guzman now appeals the district court's application of the two sentencing enhancements.

## II.

Guzman first argues that the district court erred in applying the § 2D1.1(b)(12) enhancement for maintaining a premises for drug distribution. "A district court's application of § 2D1.1(b)(12) is a factual finding reviewed for clear error." *United States v. Haines*, 803 F.3d 713, 744 (5th Cir. 2015). Thus, the question before us is whether the district court's determination "is plausible in light of the record read as a whole." *See United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005).

Section 2D1.1(b)(12) provides a two-level enhancement of a defendant's offense level if the defendant "knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, *including storage* of a controlled substance for the purpose of distribution." § 2D1.1 cmt. n.17 (emphasis added). "Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." *Id*.

3

No. 16-10387

Guzman used the auto shop for "storage of a controlled substance for the purpose of distribution" and that purpose was his "primary or principal use[] for the premises."[1] Guzman insists, however, that he did not "maintain" the premises within the meaning of § 2D1.1(b)(12). Although the term "maintains" is not expressly defined in the Guideline, the application note for § 2D1.1(b)(12) explains that "[a]mong the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." § 2D1.1 cmt. n.17.

For further interpretive guidance of the term "maintain," many of our sister circuits have drawn on parallel caselaw examining a similar statutory provision, 21 U.S.C. § 856 (commonly known as the "stash house" statute), which makes it unlawful to "knowingly . . . maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance[.]" *See, e.g.*, *United States v. Carter*, 834 F.3d 259, 261–63 (3d Cir. 2016); *United States v. Flores-Olague*, 717 F.3d 526, 531–32 (7th Cir. 2013); *United States v. Johnson*, 737 F.3d 444, 446–47 (6th Cir. 2013); *United States v. Miller*, 698 F.3d 699, 705–06 (8th Cir. 2012). This approach makes good sense, because § 2D1.1(b)(12) was based in large part on § 856.[2]

---

[1] Although the primary use of the auto shop may not have been drug storage or distribution, as the Seventh Circuit has explained, "the commentary to § 2D1.1 specifically directs sentencing courts to consider the *defendant*'s 'primary or principal uses for the premises' and how often the *defendant* used the premises for drug trafficking rather than lawful purposes." *United States v. Evans*, 826 F.3d 934, 938 (7th Cir. 2016) (quoting U.S.S.G. § 2D1.1 cmt. n.17). Here, even if the auto shop's primary use was a lawful business, Guzman's primary use of the space was drug storage for distribution.

[2] Congress directed the Sentencing Commission to add the two-level enhancement if "the defendant maintained an establishment for the manufacture or distribution of a controlled substance, as generally described in section 416 of the Controlled Substances Act

No. 16-10387

In the § 856 context, we have explained that "whether a defendant has 'maintained' a place is necessarily a fact-intensive issue that must be resolved on a case-by-case basis." *United States v. Morgan*, 117 F.3d 849, 857 (5th Cir. 1997). Similar to interpreting § 2D1.1, we "typically consider whether a defendant (1) has an ownership or leasehold interest in the premises, (2) was in charge of the premises, or (3) exercised 'supervisory control' over the premises." *United States v. Barnes*, 803 F.3d 209, 216 (5th Cir. 2015) (citing *United States v. Soto-Silva*, 129 F.3d 340, 346 (5th Cir. 1997)). These factors are not necessarily determinative alone, but should be considered together. *See United States v. Chagoya*, 510 F. App'x 327, 328 (5th Cir. 2013). We have also suggested that "not just any showing of dominion and control will suffice to support a maintenance finding" under § 856. *Morgan*, 117 F.3d at 856. Instead, the evidence should support "that the defendant exercised '*sufficient* dominion and control' over" the premises, or else "dominion and control may fall short of maintenance." *Id.* (quoting *United States v. Roberts*, 913 F.2d 211, 221 (5th Cir. 1990)).

Applying these concepts to this case, we cannot say that the district court clearly erred in its finding that Guzman "maintained" a premises within the meaning of § 2D1.1(b)(12). Guzman paid Campbell, the owner of the shop, $1,000-worth of methamphetamine per month in exchange for use of the premises for the sole purpose of storing his drug supply there. Although Guzman's name may not have been on a formal lease agreement or ownership documents, we agree with the First Circuit that "it would defy reason for a drug dealer to be able to evade application of the enhancement by the simple expedient of maintaining his stash house under someone else's name." *United*

---

(21 U.S.C. 856)." *Miller*, 698 F.3d at 705 (quoting Pub. L. No. 111-220, § 6(2), 124 Stat. 2372, 2373 (2010)).

No. 16-10387

*States v. Jones*, 778 F.3d 375, 385 (1st Cir. 2015); *see also Carter*, 834 F.3d at 261–63 (rejecting the defendant's argument that "he lacked the possessory interest necessary to have 'maintained' the properties because he was not the owner or renter" and noting that "the absence of his name on a deed or lease is insufficient to preclude the enhancement's application"); *United States v. Rodney*, 532 F. App'x 465, 472–73 (5th Cir. 2013) (upholding the enhancement when, although the defendant did not own or rent the shed where he stored his drug supply, he nonetheless had unimpeded access to the shed, controlled the drug activities there, and used it solely to store crack cocaine for the purpose of distribution).

Further, the facts contained in the PSR support a finding that Guzman had unrestricted access to the premises through Campbell, who not only provided Guzman a physical storage space in exchange for a monthly payment, but also on-call entry. *See, e.g., Carter*, 834 F.3d at 262 ("Neither the Guidelines commentary [for § 2D1.1(b)(12)] nor the case law interpreting § 856 requires that the defendant be physically present or involved on a daily basis to maintain a premises for the purpose of the enhancement. Rather, the enhancement is flexible and adaptable to a variety of factual scenarios." (internal citations and quotation marks omitted)). This level of access, dominion, and control "suffice[s] to support a maintenance finding" under the deferential clear error standard. *See Morgan*, 117 F.3d at 856.

Based on the evidence in the record, the district court's finding that Guzman maintained the premises for the purpose of storing methamphetamine was not clearly erroneous considering the record as a whole, and the court's application of § 2D1.1(b)(12) was not otherwise in error. *See Haines*, 803 F.3d at 744–45.

6

No. 16-10387

## III.

Next, Guzman claims that the district court erred in assessing the aggravating-role enhancement under U.S.S.G. § 3B1.1(c). Specifically, he argues that the evidence was insufficient to support the enhancement because it was not clear what criminal undertaking Campbell performed under the recruitment and direction of Guzman. "Whether a defendant exercised an aggravating role as an organizer, leader, manager, or supervisor for purposes of an adjustment under U.S.S.G. § 3B1.1(c) is a finding of fact reviewed for clear error." *United States v. Ochoa-Gomez*, 777 F.3d 278, 281 (5th Cir. 2015). "A defendant's role in the criminal activity for the purpose of applying [§] 3B1.1 may be deduced inferentially from available facts." *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995).

The PSR contained facts supporting a determination that Guzman recruited Campbell to be an accomplice in his methamphetamine-trafficking scheme and planned and organized the criminal operation. *See* U.S.S.G. § 3B1.1 cmt. n.4 (noting that the defendant's "recruitment of accomplices" and "degree of participation in planning or organizing the offense" are factors courts should consider when determining application of the enhancement). At Guzman's direction, Campbell stored methamphetamine that Guzman intended to distribute, and Guzman exercised control and authority over Campbell by paying him for the storage and directing Campbell to provide him access to the methamphetamine when he needed it. Thus, the district court did not clearly err in finding § 3B1.1(c) applicable. *See United States v. Turner*, 319 F.3d 716, 725 (5th Cir. 2003).

Guzman also argues that the district court's application of the § 3B1.1 enhancement was procedurally improper because the court relied exclusively on the PSR to resolve the issue, failed to explain its reasons for overruling Guzman's objection to the enhancement, and determined Guzman's Guidelines

range by having an off-the-record discussion with probation officers. These arguments are subject to plain error review, because Guzman did not object to the § 3B1.1(c) enhancement on these grounds in the district court. *See United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009) (recognizing that a party has not preserved a claim of procedural error if the party did not raise it in a manner sufficient to alert the district court to the specific error). To show plain error, Guzman must show a forfeited error that is clear or obvious and that affects his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If he makes such a showing, this court has the discretion to correct the error, but only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

"A presentence report generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010) (internal quotation marks and citation omitted). The defendant bears the burden of presenting evidence to show that the facts contained in the PSR are inaccurate or materially untrue. *See United States v. Alaniz*, 726 F.3d 586, 619 (5th Cir. 2013). In the absence of rebuttal evidence, a sentencing court may properly rely on the PSR and adopt the PSR's factual findings as its own. *Id.* Guzman did not present any evidence to rebut the PSR's findings. Thus, the district court did not commit plain error by relying on the PSR's factual findings. *See id.*

Further, the district court implicitly provided reasons for overruling Guzman's objection when it adopted the PSR's factual findings and application of the § 3B1.1(c) enhancement. *See United States v. Ahders*, 622 F.3d 115, 119 (2d Cir. 2010) ("A district court need not specifically recite all the facts relevant to its Guidelines calculation; rather, it is sufficient for the district court to

adopt the findings in the presentence report-*if* those findings are adequate to support the sentence imposed."). And, although he complains of the district court's brief explanation in passing, Guzman has not described why the district court's actions constituted reversible plain error. Finally, Guzman's contention that the district court had an improper, off-the-record discussion with probation officers is speculative at best, given that the contents of the discussion are not in the record. This unsupported, speculative contention does not demonstrate reversible plain error. *See United States v. Castaneda-Lozoya*, 812 F.3d 457, 460 (5th Cir. 2016) ("[A defendant's] speculation does not support a finding of reversible plain error.").

## IV.

For the foregoing reasons, we AFFIRM the district court's judgment.