# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-11545

United States Court of Appeals
Fifth Circuit

**FILED**
January 8, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

TIMOTHY ERIC NIMERFROH, also known as "Kaos,"

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:16-CR-121

Before HIGGINBOTHAM, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Timothy Eric Nimerfroh pleaded guilty to conspiracy to possess with intent to distribute 50 grams or more of methamphetamine. He appeals his sentence, arguing that the district court clearly erred by imposing several two-level enhancements to his sentence pursuant to United States Sentencing Guideline ("U.S.S.G.")[1] § 3B1.1(c) for Nimerfroh's leadership role in the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Nimerfroh was sentenced pursuant to the 2015 version of the Sentencing Guidelines.

No. 16-11545

offense, U.S.S.G. § 2D1.1(b)(12) for maintaining a premise for the purpose of distributing methamphetamine, and U.S.S.G. § 2D1.1(b)(5) for the importation of methamphetamine. For the reasons given below, we AFFIRM.

## I. BACKGROUND

On May 18, 2016, the Government charged Nimerfroh, along with several other individuals, including Nikie Nicole Frye and Ashleigh Lyn Allen, with conspiracy to possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). On June 2, 2016, Nimerfroh pleaded guilty to these charges. The presentence report ("PSR") applied the 2015 Guidelines Manual and set Nimerfroh's base offense level at 32. Nimerfroh received a two-level enhancement pursuant to § 3B1.1(c) for his role as organizer, leader, manager, or supervisor in the criminal activity. In support of this enhancement, the PSR stated, "Frye and Allen assisted [Nimerfroh] in the distribution of methamphetamine during Frye's romantic relationship with [Nimerfroh]. [Nimerfroh] paid Allen with user amounts of methamphetamine for her assistance." The PSR assigned Nimerfroh a two-level enhancement pursuant to § 2D1.1(b)(12) for maintaining a premise for the purpose of manufacturing or distributing a controlled substance. The PSR also added a two-level enhancement pursuant to § 2D1.1(b)(5) for the importation of methamphetamine. The PSR stated this enhancement was justified because "[t]he defendant admitted that prior to his arrest, he was dealing with the 'cartel' and they distributed in kilogram quantities." The PSR made other adjustments not relevant to this appeal and ultimately set Nimerfroh's total offense level at 39. This offense level, combined with Nimerfroh's criminal history category of VI, produced a Sentencing Guidelines range of 360 to life. But because of the statutorily authorized maximum sentence, Nimerfroh's guidelines range became 360 to 480 months.

No. 16-11545

Nimerfroh objected, inter alia, to the enhancements applied in the PSR for leading or organizing the criminal activity, maintaining a premise, and importing methamphetamine. He raised these objections again at his sentencing hearing. The district court overruled his objections. As to the leadership enhancement, the court concluded that the PSR contained facts indicating Frye and Allen had assisted Nimerfroh in his drug-trafficking activities. The court stated as to the premises enhancement that, "I don't think there's any question . . . the defendant was using those premises for his drug-trafficking activities, and they were premises that he had control over because he was renting them, so I'm going to overrule that objection." Finally, as to the importation enhancement, the court was satisfied there was sufficient evidence to support a finding that the drugs came from Mexico. The court reasoned, "I think it's common knowledge that when reference is made in this part of the world to a cartel, they are talking about the drug cartels in Mexico." Based off this, the court found by a preponderance of the evidence that Nimerfroh dealt drugs that were imported from Mexico.

The district court concluded that Nimerfroh's total offense level was 39 and that his Sentencing Guidelines imprisonment range was 360 to life. However, because Nimerfroh was charged with possession with intent to distribute 50 grams or more of a mixture containing a detectable amount of methamphetamine, which carries a statutory maximum penalty of 480 months, *see* 21 U.S.C. § 841(b)(1)(B)(viii), the district court sentenced Nimerfroh based on a guidelines range of 360 to 480 months' imprisonment. The court ultimately sentenced Nimerfroh to 360 months of imprisonment and five years of supervised release. Nimerfroh timely appealed.

## II. DISCUSSION

The district court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 18 U.S.C. § 3742(a). On appeal, Nimerfroh

challenges his sentence, arguing that the district court erroneously applied three enhancements to his base offense level.

## A.    The Leadership Enhancement

Nimerfroh argues that the district court erred in imposing a two-level enhancement for his leader or organizer role in the criminal activity pursuant to § 3B1.1(c). Whether the defendant exercised an aggravating role pursuant to § 3B1.1(c) is a finding of fact reviewed for clear error. *United States v. Guzman-Reyes*, 853 F.3d 260, 265 (5th Cir. 2017). "A defendant's role in the criminal activity for the purpose of applying [§] 3B1.1 may be deduced inferentially from available facts." *Id.* (quoting *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995)). "A factual finding on a sentencing factor is not clearly erroneous so 'long as it is plausible in light of the record read as a whole.'" *United States v. Alaniz*, 726 F.3d 586, 622 (5th Cir. 2013) (quoting *United States v. Morris*, 46 F.3d 410, 419 (5th Cir. 1995)).

Section 3B1.1(c) provides for a two-level enhancement if "the defendant was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). "The application notes to section 3B1.1 require that the defendant either (1) exercised control over another participant in the offense, or (2) 'exercised management responsibility over the property, assets, or activities of a criminal organization.'" *United States v. Delgado*, 672 F.3d 320, 345 (5th Cir. 2012) (en banc) (quoting U.S.S.G. § 3B1.1 cmt. n.2).

Here, the district court determined that the PSR contained facts supporting the leadership enhancement because it indicated that Frye and Allen had assisted Nimerfroh. Indeed, the PSR described their conduct as follows:

> Frye assisted Nimerfroh in the distribution of methamphetamine, including weighing and packaging methamphetamine, and facilitating transactions between Nimerfroh and at least two customers. Allen was identified as a customer of Frye, and she

began assisting Frye and Nimerfroh in the distribution of methamphetamine. Allen received personal use amounts of methamphetamine from Nimerfroh, as payment for her assistance.

Nimerfroh presented no specific factual challenges to the PSR. In light of the evidence and the record, the district court's determination that Nimerfroh managed Frye and Allen was plausible. Accordingly, the district court did not err by assessing a leadership role enhancement under § 3B1.1(c). *See Guzman-Reyes*, 853 F.3d at 265–66.

## B.    The Premises Enhancement

Nimerfroh argues that the district court erred in applying the two-level enhancement pursuant to § 2D1.1(b)(12) based on a finding that he maintained a premises—hotel rooms—for the purpose of distributing methamphetamine. "A district court's application of § 2D1.1(b)(12) is a factual finding reviewed for clear error." *Guzman-Reyes*, 853 F.3d at 263 (quoting *United States v. Haines*, 803 F.3d 713, 744 (5th Cir. 2015)). This Court must ask whether the district court made a plausible determination "in light of the record read as a whole." *Id.* (quoting *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005)).

Section 2D1.1(b)(12) provides that "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by 2 levels." U.S.S.G. § 2D1.1(b)(12). In determining whether a defendant "maintained a premises," the advisory notes suggest that courts should consider factors such as "whether the defendant held a possessory interest in (e.g., owned or rented) the premises" and "the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1 cmt. n.17. "Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained,

but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses . . . ." *Id.*

The district court found the enhancement warranted because Nimerfroh used the premises for drug-trafficking activities, and controlled the premises since he was renting them. Nimerfroh argues that the primary purpose of the hotel rooms was as his residence, not to distribute methamphetamine.

We rejected a similar argument in *United States v. Ramos*, 509 F. App'x 317 (5th Cir. 2013) (per curiam) (unpublished). There, the defendant challenged an application of the premises enhancement on the ground that his use of the premises—his home—for the sale of drugs was incidental to his primary purpose of using it as a residence. *Id.* at 318. This Court concluded that the defendant's argument was insufficient to show that the district "court's fact-finding and inferences from the record that one of his primary uses of the home was to store narcotics for distribution were unreasonable or implausible in light of the record as a whole." *Id.*

Here, Nimerfroh did not dispute that he sold drugs from the premises. Instead, he simply argued that he also lived in the rooms. In light of the record, the district court plausibly determined that one of Nimerfroh's primary uses for the hotel rooms was for distributing methamphetamine. Accordingly, the district court did not clearly err in applying the premises enhancement. *See id.*

## C.    The Importation Enhancement

Nimerfroh also argues that the district court erred in imposing a two-level enhancement pursuant to § 2D1.1(b)(5) because there was insufficient evidence to show that the methamphetamine was imported. We review the district court's factual determination that an offense involved the importation of methamphetamine for clear error. *United States v. Serfass*, 684 F.3d 548, 550 (5th Cir. 2012). "There is no clear error where the district court's finding is plausible in light of the record as a whole." *United States v. Rico*, 864 F.3d

381, 383 (5th Cir. 2017) (citing *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008) (per curiam)). "The government must prove the facts underlying a sentencing enhancement by a preponderance of the evidence." *Serfass*, 684 F.3d at 553 (citing *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011)).

Section 2D1.1(b)(5) provides for a two-level enhancement if "the offense involved the importation of amphetamine or methamphetamine" and the defendant does not receive a mitigating role adjustment. U.S.S.G. § 2D1.1(b)(5). The district court reasoned this enhancement was appropriate because, as the PSR noted, Nimerfroh had made statements that he was dealing with the "cartel." The district court applied the enhancement, stating that it could find by a preponderance of the evidence that the drugs were imported from Mexico because it is "common knowledge that when reference is made in this part of the world to a cartel, they are talking about the drug cartels in Mexico."

This Court must determine whether, without more, the mere reference to a cartel is sufficient to prove by a preponderance of the evidence that Nimerfroh was dealing with imported methamphetamine. We hold it is not.

We have previously found the importation enhancement warranted where the PSR clearly stated that the drugs at issue were imported from Mexico. *See, e.g.*, *United States v. Foulks*, 747 F.3d 914, 915 (5th Cir. 2014); *United States v. Moreno*, 598 F. App'x 261, 263 (5th Cir. 2015); *United States v. Vasquez*, 596 F. App'x 260, 263 (5th Cir. 2014). Here, however, the PSR lacks any discussion of importation aside from Nimerfroh's mention that he was dealing with the "cartel." Even if his use of the word "cartel" could be read to mean a Mexican cartel, such reading says nothing about where the cartel's activities took place nor does it speak to where the methamphetamine came from and whether it was imported. A Mexican cartel could have manufactured

the methamphetamine within the United States and then sold it to Nimerfroh—no importation required. Therefore, considering the record as a whole, there is insufficient evidence to infer that the methamphetamine Nimerfroh possessed had been imported from Mexico. Accordingly, the district court clearly erred by applying the § 2D1.1(b)(5) enhancement.

Nevertheless, not every procedural error warrants reversal. *See United States v. Delgado-Martinez*, 564 F.3d 750, 752 (5th Cir. 2009). Here, any error by the district court was harmless because Nimerfroh would have received the same guidelines range of 360 months to life imprisonment (adjusted to 360 months to 480 months because of the statutory maximum), even without the importation enhancement. *See United States v. Garcia-Gonzalez*, 714 F.3d 306, 315 (5th Cir. 2013); *United States v. Ramos*, 71 F.3d 1150, 1158 n.27 (5th Cir. 1995). Accordingly, we conclude no reversible error was committed.

### III. CONCLUSION

For the foregoing reasons, Nimerfroh's sentence is AFFIRMED.