# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-40322
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

April 10, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

JUAN LEONARDO CADENAS-URENA,

> Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:18-CR-49-1

Before KING, GRAVES, and WILLETT, Circuit Judges.

PER CURIAM:*

Juan Cadenas-Urena was convicted of conspiracy to possess methamphetamine with the intent to distribute. Following a two-day trial, the jury concluded that he was responsible for 500 grams or more of a mixture containing methamphetamine or 50 grams or more of actual methamphetamine. At sentencing, Cadenas-Urena received a two-level

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-40322

enhancement under U.S.S.G. § 2D1.1(b)(12) because the district court found that he maintained a premises for the purpose of maintaining or distributing a controlled substance.

## I.

Cadenas-Urena raises two arguments on appeal. First, he argues that there was insufficient evidence to sustain his conviction. Although we review this argument de novo, our review is "highly deferential to the verdict." *United States v. Cannon*, 750 F.3d 492, 506 (5th Cir. 2014) (citation omitted). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Oti*, 872 F.3d 678, 686 (5th Cir. 2017) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Cadenas-Urena asserts that, at worst, the record establishes a buyer–seller relationship, not a conspiracy. But there is evidence that Cadenas-Urena coordinated with at least two other individuals to deliver methamphetamine. The buyer, Jesse Martinez, agreed to buy drugs from a supplier, a man known as "Chino." Cadenas-Urena spoke with Martinez on multiple occasions and personally delivered the specified amount of methamphetamine that Martinez ordered from Chino. Cadenas-Urena's conversations with Martinez focused on delivery logistics, not the terms of sale, and he could not change the location of the delivery without approval from Chino. A fourth individual—with whom Cadenas-Urena shared a house to access and store methamphetamine—drove Cadenas-Urena to the delivery point. Accordingly, the jury had sufficient evidence to conclude that there was a drug conspiracy. *See United States v. Suarez*, 879 F.3d 626, 631 (5th Cir. 2018) (requiring "(1) an agreement between two or more persons to violate narcotics laws; (2) knowledge of the agreement; and (3) voluntar[y] participation in the agreement"); *see also United States v.*

No. 19-40322

*Mendoza*, 226 F.3d 340, 343 (5th Cir. 2000) ("The elements of the conspiracy may be established by circumstantial evidence and 'may be inferred from the development and collocation of circumstances.'" (citation omitted)).

## II.

Cadenas-Urena also argues that the district court erred by applying a sentencing enhancement under U.S.S.G. § 2D1.1(b)(12) because he did not maintain a premises for the purpose of maintaining or distributing a controlled substance. "[T]he district court's determination that [a sentencing] enhancement applies is a factual finding reviewed for clear error. 'A factual finding is not clearly erroneous if it is plausible, considering the record as a whole.'" *United States v. Romans*, 823 F.3d 299, 317 (5th Cir. 2016) (citations omitted). Instead, "[a] finding is clearly erroneous if, on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed." *United States v. Marquez*, 685 F.3d 501, 508 (5th Cir. 2012) (internal quotation marks and citation omitted).

Cadenas-Urena contends that this enhancement was inapplicable primarily because he did not have "any ownership or leasehold interest in the premises" or keys to the house. The record shows, however, that Cadenas-Urena was seen leaving the house alone and returning, and the police observed that he was "living" in the house along with the individual who drove him to the drug sale. The house also contained documents suggesting that Cadenas-Urena lived there.

From this set of facts, we cannot conclude that the district court clearly erred, because it was plausible to conclude that Cadenas-Urena exercised sufficient dominion and control over a premises used to distribute controlled

substances.[1] *See, e.g.*, *United States v. Guzman-Reyes*, 853 F.3d 260, 264 (5th Cir. 2017) ("[T]he evidence should support 'that the defendant exercised "*sufficient* dominion and control" over' the premises" (citation omitted)); *United States v. Chagoya*, 510 F. App'x 327, 328 (5th Cir. 2013) (noting that one factor is "the extent to which the defendant controlled access to, or activities at, the premises"). Even if Cadenas-Urena did not have an ownership or leasehold interest, "it would defy reason for a drug dealer to be able to evade application of the enhancement by the simple expedient of maintaining his stash house under someone else's name." *Guzman-Reyes*, 853 F.3d at 265 (quoting *United States v. Jones*, 778 F.3d 375, 385 (1st Cir. 2015)). Additionally, Cadenas-Urena offers no evidence that has "left [us] with a definite and firm conviction that a mistake has been committed." *Marquez*, 685 F.3d at 508.

## III.

The judgment of the district court is AFFIRMED.

---

[1] Nor was it clear error to find that Cadenas-Urena used the premises to manufacture or distribute methamphetamine. The house was "sparsely furnished," contained 3.25 kilograms of methamphetamine, smelled like methamphetamine, and contained equipment used to facilitate the sale of methamphetamine. Before Cadenas-Urena delivered the methamphetamine in question, he was near the house according to his cell-phone-location data, and the delivery car was parked near the house and registered to Cardenas-Urena's alias. Moreover, Cadenas-Urena was in the house on the date of his arrest.