# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 3, 2020

Lyle W. Cayce
Clerk

No. 19-20701

United States of America,

*Plaintiff—Appellee*,

*versus*

Rafael Castro Fonseca,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CR-492-3

Before Stewart, Duncan, and Wilson, *Circuit Judges*.

Per Curiam:*

Rafael Castro Fonseca pled guilty, without a plea agreement, to conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A), and to aiding and abetting the substantive offense of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-20701

U.S.C. § 2.  On appeal, Fonseca contests his within-guidelines sentence, asserting the district court erred in applying a two-level "stash house" enhancement pursuant to U.S.S.G. § 2D1.1(b)(12).[1] Fonseca also asserts that his written judgment contains a clerical error, requiring remand for correction.  While we agree that a clerical error in the judgment mandates a limited remand for correction, we otherwise affirm Fonseca's sentence.

## I.

According to the presentence report (PSR) adopted by the district court, Fonseca met his co-conspirator, Alvaro Robledo Tovar, in Mexico, where they began smuggling cocaine.  The two then continued this operation in the United States, where "[o]ver time, Fonseca agreed to store large amounts of cocaine at his apartment for Tovar in exchange for payments." Tovar also paid Fonseca to deliver packages.

On March 22, 2018, following a tip from a cooperating source, the Pasadena, Texas Police Department Narcotics Division conducted surveillance of Tovar's residence.  While watching the residence, officers saw Fonseca and Tovar exit with a cooler and load it into a Ford Taurus. Fonseca then left the residence driving the Taurus.  Officers stopped the Taurus, detained Fonseca, and searched the vehicle.  The search revealed a cooler containing $318,659 and 9.94 kilograms of cocaine.[2]  Fonseca also

---

[1] This enhancement is "based on 21 U.S.C. § 856, the so called 'stash house' statute.  As the colloquial name implies, § 856 and [§] 2D1.1(b)(12) do not target the homes of casual users of illicit substances, but rather facilities where a primary or principal purpose is the manufacture and distribution of [narcotics]." *United States v. Rodriguez*, 707 F. App'x 224, 226–27 (5th Cir. 2017) (unpublished).

[2]  The PSR indicates that on March 22, Tovar paid Fonseca $300 to pick up the cooler and hold it until further notice.

No. 19-20701

consented to a search of his apartment (Fonseca's intended destination), which revealed a pistol and a 9mm magazine.

Based on these facts, the probation officer's PSR included the following offense-level computation:

| Calculation | Level | U.S.S.G. § | Description |
|---|---|---|---|
| Base offense level | 32 | 2D1.1(a)(5), 2D1.1(c)(4) | A violation of 21 USC 841(a)(1) and (b)(1)(A) involving at least 15 kilograms but less than 50 kilograms of cocaine |
| Specific offense characteristic | +2 | 2D1.1(b)(1) | Possession of a dangerous weapon (including a firearm) |
| Specific offense characteristic | +2 | 2D1.1(b)(12) | Maintaining a premises for the purpose of distributing a controlled substance |
| Adjustment to offense level | -3 | 3E1.1(a)&(b) | Acceptance of responsibility |
| **Total offense level** | 33 | | |

With no prior criminal history, Fonseca had a criminal history category of I. Together, Fonseca's total offense level of 33 and criminal history category of I placed Fonseca's guidelines imprisonment range at 135 to 168 months.

Fonseca filed written objections to the PSR, primarily challenging the § 2D1.1(b)(12) enhancement, which applies to persons who "maintain[] a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). According to Fonseca, he did not maintain a premises to distribute narcotics, the search of his apartment did not reveal any narcotics, and the PSR did not clarify how many times he stored narcotics at his apartment. The probation office filed an addendum to

the PSR noting Fonseca's objections but maintaining that the enhancement applied. According to the probation office, Fonseca, "[b]y his own admission, . . . allowed narcotics to be delivered to and stored in his apartment."

At sentencing, the district court addressed Fonseca's objection to the § 2D1.1(b)(12) enhancement: "I don't think there's any dispute about Mr. Fonseca allowing the narcotics to be delivered and stored in his apartment. His argument is that that was not the primary purpose for which he maintained the apartment." Fonseca's counsel agreed. After hearing from both parties, the court overruled Fonseca's objection:

> I think that the case law supports the enhancement in this case, and certainly, the facts of Mr. Fonseca allowing the narcotics to be delivered to and stored in his apartment—these were not trivial quantities. This was not for a very short period. These were substantial amounts, and they were not kept there for hours or even just a few days. It was longer than that.

Fonseca asked for a below-guidelines sentence of 120 months, and the government requested a 135-month sentence (the low end of the guidelines range). The court agreed with the government and sentenced Fonseca to 135 months of imprisonment followed by five years of supervised release on each count, to run concurrently. The court imposed a $200 special assessment and ordered that "$100 is due immediately. The remaining amount is due over the period of imprisonment. Up to [fifty] percent of what is earned in [prison] will be sent . . . to help satisfy the remaining mandatory assessment." However, the written judgment filed after sentencing provided that a "[l]ump sum payment of $200 [would be] due immediately . . . ." Fonseca now appeals.

No. 19-20701

## II.

On appeal, Fonseca first challenges the district court's application of the two-level "stash house" enhancement under § 2D1.1(b)(12). "A district court's application of § 2D1.1(b)(12) is a factual finding reviewed for clear error." *United States v. Guzman-Reyes*, 853 F.3d 260, 263 (5th Cir. 2017) (quoting *United States v. Haines*, 803 F.3d 713, 744 (5th Cir. 2015)). We deem a district court's factual finding clearly erroneous only when "based on the entire evidence, [we are] left with the definite and firm conviction that a mistake has been committed." *Haines*, 803 F.3d at 744. (quoting *United States v. Akins*, 746 F.3d 590, 609 (5th Cir. 2014) (alteration in original)).

Fonseca contends the district court clearly erred in applying the § 2D1.1(b)(12) enhancement because the facts in the PSR do not support the enhancement, "especially in light of the [g]uidelines commentary." Fonseca emphasizes that narcotics distribution must be a *primary or principal* use of the residence. According to Fonseca, although the PSR provides that he "agreed to store large amounts of cocaine at his apartment for Tovar in exchange for payments," the PSR does not provide any information about frequency, which would indicate the primary or principal use of his residence. Fonseca also notes that—unlike other actions where this Court has upheld a § 2D1.1(b)(12) enhancement—the search of his apartment did not uncover any narcotics or distribution-related items, except for a pistol and magazine. While we acknowledge that the evidence here presents a close case, we cannot say "with [a] definite and firm conviction that a mistake has been committed." *Haines*, 803 F.3d at 744.

The guidelines comment referenced by Fonseca provides:

Subsection (b)(12) applies to a defendant who knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled

No. 19-20701

substance, including storage of a controlled substance for the purpose of distribution.

. . .

Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

U.S.S.G. § 2D1.1, cmt. n.17.

As this court has previously stated, "the evidentiary bar for 'primary or principal use' has not been set high." *Rodriguez*, 707 F. App'x at 227 (referencing *United States v. Benitez*, 809 F.3d 243, 250 (5th Cir. 2015); *United States v. Carrillo*, 689 F. App'x 334, 336 (5th Cir. 2017) (unpublished)). In *United States v. Lopez*, 750 F. App'x 349, 352–53 (5th Cir. 2018) (unpublished), this court upheld a § 2D1.1(b)(12) enhancement where the PSR only reflected that the narcotics intended for distribution were stored in the defendant's home on a single occasion. There, the court determined "that the district court could plausibly conclude that drug distribution was a primary purpose of [the defendant's] residence based on the paraphernalia, the digital scale, and the amount of drugs found in various parts of the house and on the property." *Id*. at 352.

Here, officers found a pistol and a 9mm magazine at Fonseca's apartment, and Fonseca told officers he carried the pistol when delivering packages for Tovar. Further, while the PSR does not identify the precise number of times that Fonseca stored narcotics at his residence, the PSR makes it clear—and Fonseca admits—that this was not the first time he had

stored drugs for Tovar. According to the PSR, "Fonseca worked for Tovar and was responsible for picking up packages and storing multiple kilograms of cocaine at [his (Fonseca's)] residence in Pasadena, Texas." On the date of the subject incident, Tovar paid Fonseca $300 to pick up and hold a cooler full of cocaine and a large sum of cash until further notice. We give minimal weight to the fact that the search of Fonseca's apartment did not reveal narcotics; the officers stopped Fonseca in transit to his residence, where he intended to store the 9.94 kilograms of cocaine and $318,659 that he was carrying in his vehicle. For these reasons, the district court's determination "is plausible in light of the record read as a whole." *Guzman-Reyes*, 853 F.3d at 262 (quoting *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005)). We thus affirm the district court's application of § 2D1.1(b)(12).[3]

## III.

Fonseca next raises as error the conflict between the oral pronouncement and the written judgment regarding the $200 special-assessment payment. During sentencing, the district court ordered $100 due immediately, with the remaining amount due over the period of imprisonment. By contrast, the written judgment requires an immediate $200 lump-sum payment. Fonseca asks that we remand for the purpose of correcting the written judgment to reflect the oral pronouncement. The government agrees.

---

[3] Fonseca also asserts that, based on the district judge's comments during the sentencing hearing, the district court may have confused him with his co-defendant, Tovar, who, defendant argues, used his residence as a stash house. Again, viewing the entire record as we are required to do, we cannot say that "we are left with the definite and firm conviction that a mistake has been committed." *Haines*, 803 F.3d at 744.

No. 19-20701

"[W]hen there is a conflict between a written sentence and an oral pronouncement, the oral pronouncement controls." *United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001) (per curiam); *see also United States v. Diggles*, 957 F.3d 551, 557 (5th Cir. 2020) (en banc), *petition for cert. filed* (U.S. Sept. 24, 2020) (No. 20-5836). Here, the written judgment conflicts with the payment schedule set forth during the oral pronouncement. Accordingly, we agree with the parties that this case must be remanded to correct the written judgment so that it mirrors the oral pronouncement. *See United States v. Pacheco-Alvarado*, 782 F.3d 213, 223 (5th Cir. 2015) (ordering a limited remand to correct the written judgment to reflect the oral pronouncement's payment schedule).

## IV.

The judgment of the district court is REMANDED for the limited purpose of correcting the clerical error regarding payment of the special assessment; otherwise, the district court's judgment is AFFIRMED.