# United States Court of Appeals for the Fifth Circuit

No. 23-30126

United States Court of Appeals
Fifth Circuit

**FILED**

May 29, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

BRIAN BROUSSARD,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:21-CR-00138

Before Jones and Douglas, *Circuit Judges*, and Doughty, *Chief District Judge*.[*]
Per Curiam:[**]

## I. BACKGROUND

Brian Broussard ("Broussard") was arrested on May 12, 2021, during a buy-bust operation, after a months-long investigation into Broussard's drug trafficking crimes. On the day of his arrest, three simultaneous residential search warrants were executed in connection with law enforcement's investigation of Broussard. Prior to the arrest, Broussard was observed for months travelling to the freely accessible stash house, a public housing residence issued to Carlnetta Andrus, and he was almost always alone. Following the arrest, testimony revealed that Broussard and Carlnetta Andrus's husband, Issac Andrus, were engaged in a transaction to facilitate and store drugs at the home. Around 9:00 a.m. on the day of Broussard's arrest, ATF agents observed Broussard arriving at Long Plantation, the residential apartment of Broussard's girlfriend, and one of the three residential areas subject to a search warrant. Upon exiting the vehicle, ATF agents observed Broussard openly carrying a black Glock handgun despite being a convicted felon.

Shortly after his arrival, Broussard departed in a silver Honda Accord without ATF agents initially noticing. Broussard traveled to the aforementioned stash house. Broussard then departed from the stash house in the Honda Accord. Law enforcement personnel abandoned the buy-bust operation and requested assistance from the Lafayette Police Department in conducting a roadside stop to detain Broussard. Officer Ryan Richard ("Officer Richard"), who communicated with the Federal Bureau of Investigation ("FBI"), testified he was informed by Agent Herman of the FBI that Broussard was considered armed and dangerous. Upon executing the stop, Officer Richard found approximately $2,000.00 of cash on Broussard's person, but no gun was found. Officer Richard, through his communications with FBI and ATF agents, was aware Broussard had possession of or had recently possessed a Glock handgun. Broussard was detained and escorted to the back of the police car. To verify no occupant was still in the car, Officer

---

[*] Chief United States District Judge for the Western District of Louisiana, sitting by designation.

[**] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

Richard peered through the back window, but the tint was too dark to see through it. Law enforcement officers seized the keys to the vehicle and opened the back door, where they noticed a bag with roughly $7,000.00 of cash protruding out of it. The Honda was driven to the stash house, but a crowd began gathering. Law enforcement personnel moved the Honda to the local FBI parking lot where an inventory search was conducted. Agents found the Glock handgun under the driver's seat. The handgun was illegally modified with a "Glock switch" to allow for automatic firing.

Around June 16, 2021, Broussard was charged in an eighteen-count indictment with multiple drug trafficking, firearm, and money laundering crimes. The Counts relevant to the Court's analysis are Counts One, Three, Four, and Five. Count One charged Broussard with Conspiracy to Distribute and Possesses with Intent to distribute fentanyl. Count Three charged Broussard with, *inter alia*, carrying and using a Glock handgun in relation to a drug trafficking crime. Count Four charged Broussard with possessing multiple firearms, including the Glock handgun, after a felony conviction. Count Five charged Broussard with possession of an unregistered machine gun, namely the Glock handgun. On November 21, 2021, Broussard executed a conditional plea of guilty to Count One, reserving the right to appeal an adverse ruling on the motion to suppress.

Broussard filed a motion to suppress the Glock handgun received from his vehicle during the traffic stop on May 12, 2021, arguing that it was recovered as a result of a warrantless search without probable cause. After conducting an evidentiary hearing on September 29, 2022, the district court denied the motion and reasoned that law enforcement had established a lawful basis for the stop and probable cause of the search of the car under three alternative theories: the collective knowledge doctrine, the inventory search doctrine, and the automobile exception. On February 23, 2023, the district court sentenced Broussard to a guideline sentence of 162 months imprisonment. The district judge stated that Broussard was running a "pretty large-scale drug operation" and that Broussard had numerous firearms surrounding the drugs. The district judge gave a two-level enhancement under U.S.S.G § 2D1.1(b)(12) because Broussard "maintained a premises for the purpose of manufacturing or distributing a controlled substance."

## II. DISCUSSION

The Appellant makes two arguments on appeal: (1) the handgun was recovered during a warrantless vehicle search without probable cause, so denial of the motion to suppress was in error; and (2) Defendant had no possessory interest in the stash house, so a two-level enhancement at sentencing for maintaining a stash house was in error. As a preliminary matter, Appellee asserts that Broussard's argument regarding the handgun should not be considered because this court has no jurisdiction due to the issue becoming moot.

## A. Mootness

Because mootness is a jurisdictional question that affects whether the court can rule on the issue below, it must be addressed first. Mootness deprives a court of jurisdiction. *See Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990). "[A] case remains live '[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation,' and it 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 295 (2023) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). A criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed upon the basis of the challenged conviction. *Sibron v. New York*, 302 U.S. 40, 57 (1968).

Appellee contends that the appeal of the motion to suppress is moot because the defendant did not suffer actual injury as all Counts relating to the Glock handgun were dismissed under the terms of the conditional guilty plea. Appellant asserts in reply that his plea agreement reserved the right to appeal an unfavorable ruling on the motion to suppress, meaning he could withdraw such a plea if he is successful on appeal.

Appellant is correct. "(2) *Conditional Plea*. With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea." FED. R. CRIM. P. 11(A)(2). Indisputably, hindering Broussard's ability to withdraw his plea would be a collateral legal consequence, which alone establishes that this issue is not moot. The district court has established sua sponte several other collateral legal

consequences that further affect Broussard's case. At the sentencing, the district judge consciously or subconsciously considered Broussard's high propensity of committing crimes with illegal firearms. Certainly, the possibility that a higher sentence was rendered implicates adverse legal consequences to the defendant. *Sibron*, 392 U.S. at 55 (the "mere possibility" of such consequences is enough to preclude a finding of mootness).

Although the motion to suppress vastly focused on the Glock handgun, Broussard also moved for a hearing to show cause why all evidence obtained both in the car and his person should not be suppressed. Such evidence includes: 1) the Glock handgun with a mechanical modification switch that allowed the firearm to be fully automatic; 2) the $7,000.00 worth of United States currency in a bag located in the back seat of the vehicle; and 3) the $2,000.00 in United States currency located on Broussard's person. Thus, the motion to suppress not only involves the Glock handgun but also other evidence that is relevant to the charge Broussard pleaded guilty to—conspiracy to possess with intent to distribute controlled substances.

Thus, this Court finds that the motion to suppress the Glock handgun is not moot and may be considered by this Court.

### B.  Motion to Suppress Evidence

Appellant argues on appeal that the two searches of the car, namely the one on the side of the interstate and the one at the FBI parking lot, were not supported by probable cause. Therefore, Appellant believes the district court erred in denying his motion to suppress the Glock handgun seized from the car. When considering a denial of a motion to suppress, the court reviews questions of law de novo and findings of fact for clear error. *United States v. McKinney*, 980 F.3d 485, 491 (5th Cir. 2020). Because the evidentiary hearing enabled the district court to judge the credibility of the witnesses, we give the district court heightened deference. *Id.* Further, this court may affirm the district court's ruling based on any rationale supported by the record, but when there is no warrant, the burden of proof falls upon the government to prove that the search was valid. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). The evidence is viewed in the light most favorable to the prevailing party. *United States v. Alvarez*, 40 F.4th 339, 344 (5th Cir. 2022).

Probable cause for an arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. *Davidson v. City of Stafford, Texas* 848 F.3d 384, 391 (5th Cir. 2017). Probable cause to search exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Grubbs*, 547 U.S. 90, 95 (2006).

### 1. *Collective Knowledge Doctrine*

Under the "collective knowledge doctrine," an officer initiating the stop or conducting the search need not have personal knowledge that gave rise to reasonable suspicion or probable cause so long as he is acting at the request of those who have the necessary information. *United States v. Zuniga*, 860 F.3d 276, 283 (5th Cir. 2017). Necessarily, then, there must be some degree of communication between the acting officer and the officer who has the requisite facts. *See U.S. v. Ibarra*, 493 F.3d 526, 531 (5th Cir. 2007).

Although Appellant argues that law enforcement never saw Broussard enter the Honda and leave the property, it is reasonable to suspect that if one goes out of sight and suddenly a car is missing from the same property, the person potentially exited the premises in the missing car. Law enforcement personnel who conducted the search both on the side of the interstate and at the FBI parking lot knew of the facts giving rise to the probable cause. For example, Agent Herman's firsthand knowledge of seeing Broussard with a gun during a drug trafficking operation on the day of the search imputed to Officer Richard. It would be unrealistic if the only person who could detain a criminal and seize evidence is the officer with all the necessary facts and the one who directly witnessed the crime. The district court correctly concluded that probable cause existed to search the car because officers collectively knew that Broussard potentially possessed a firearm, that Broussard was a prohibited person in possession of such a firearm, and that both Broussard and the Honda Accord were involved in the drug trafficking organization that was under investigation. After the stop and considering the $2,000.00 of cash found on Broussard's person, the knowledge of a potential firearm, and the discovery of nearly $7,000.00 of cash

on the seat while clearing the car, there was a fair probability to conclude that contraband or evidence of a crime would be found in the car.

Even if probable cause were not present at the inception of events on May 12, 2021, at the very least the officers had reasonable suspicion to stop the car. Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant investigative detention. *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006). Considering Agent Herman's imputation of knowledge regarding earlier observations of Broussard, there was, at the minimum, reasonable suspicion that justified the stop. Once the stop was effectuated based on reasonable suspicion, officers noticed a large amount of cash on Broussard's person and his seat, rising to probable cause for both an arrest and a search considering the totality of the evidence.

Because Officer Richard knew Broussard had committed a crime or was currently committing a crime by being a felon in possession of a gun during a drug trafficking scheme, there was probable cause to arrest Broussard. Further, Officer Richard had probable cause, or at the least reasonable suspicion, to open the back door of the vehicle because there was a possibility that the earlier-observed gun was in the car and that other occupants may be present.

### 2. Inventory Search Doctrine

Police are not precluded from conducting an inventory search when they lawfully search the vehicle of an individual they suspect to be involved in a crime. *United States v. Marshall*, 986 F.2d 1171, 1176 (5th Cir. 1993). "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). An inventory search is reasonable if it is conducted pursuant to standardized regulations and procedures that are consistent with "[1] protecting the property of the vehicle's owner, [2] protecting the police against claims or disputes over lost or stolen property, and [3] protecting the police from danger." *United States v. Hope*, 102 F.3d 114, 116 (5th Cir. 1996). "There is no requirement that the prosecution [need to submit] evidence of written procedures for inventory searches; testimony regarding reliance on standardized procedures is sufficient . . . as is an officer's unrebutted testimony

that he acted in accordance with standard inventory procedures [.]" *United States v. Lage*, 183 F.3d 374, 380 (5th Cir. 1999).

Appellee contends that even if law enforcement lacked probable cause to search Broussard's car on the side of the interstate, the search in the FBI parking lot was justified under the "inventory search" doctrine, and the district court agreed. Appellant argues that the officers had an ulterior motive to search the car because of both the lack of an inventory log and because the car was moved from the place of the original stop.

The district court judge correctly ruled that inspection of the car was a valid inventory search. Inventorying the car reduced the exposure of liability for lost or stolen items. Cash in the amount of $7,000.00 was in plain view on the back seat, in addition to the nearly $2,000.00 in cash found on Broussard's person. "[S]o long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry." *United States v. Causey*, 834 F.2d 1179, 1184 (5th Cir. 1987). Certainly, large sums of cash should have been inventoried to reduce the obvious risk of it being lost or stolen. Secondly, the car was originally stopped in a dangerous location. There is an obvious need to move the car away from the interstate to protect the officers and the vehicle owner's property. The car was moved a second time away from the stash house because testimony showed a large crowd began gathering. Again, the inventory search is reasonable if consistent with protecting the officers, protecting the vehicle owner's property, and reducing the risk of potential claims and disputes over lost property, which is exactly what happened in this case.

### 3. *Automobile Exception*

Warrantless searches are per se unreasonable under the Fourth Amendment, subject to a few specific exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Under the automobile exception, police may stop and search a vehicle without obtaining a warrant if they have probable cause to believe it contains contraband. *United States v. Beene*, 818 F.3d 157, 164 (5th Cir. 2016). Officers are justified in using their "own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Henry*, 37 F.4th 173, 177 (5th Cir. 2022) (quoting *United States v. Arvizu*, 534 U.S. 266,

273 (2002)). When reviewing the denial of a motion to suppress, this court considers the evidence in the light most favorable to the prevailing party. *United States v. Zavala*, 541 F.3d 562, 574 (5th Cir. 2008).

The officers had reason to believe that evidence of a crime was in the vehicle. At the suppression hearing, the district court found that knowledge concerning Broussard's activity the morning of the arrest and months-long investigation established probable cause. A few hours before the stop, law enforcement observed Broussard, a convicted felon, with a handgun around a known drug trafficking house. Broussard went out of sight and, simultaneously, a Honda Accord was seen leaving the premises. This amounted to probable cause to pull Broussard over because, although the officers were not certain Broussard was in the Honda, the officers correctly relied on their own inferences and experiences to stop the car. After Broussard was pulled over and identified with over $2,000.00 in cash on his person, law enforcement cleared the car to make sure no other occupants were inside and noticed around $7,000.00 in cash on the back seat. Under *United States v. Ross*, 465 U.S. 798 (1982), when a car has been legitimately stopped and there is probable cause to believe it contains contraband, the police may conduct a probing search of all areas of the car and containers that might hold the contraband.

While visible cash may not conclusively show that a crime has been committed, considering the totality of the circumstances, and viewing the evidence in the light most favorable to the Government, the district court did not err in determining that officers had probable cause to believe evidence related to criminal activity was in Broussard's vehicle. Thus, the warrantless search was justified.

After considering all the above doctrines, the motion to suppress is AFFIRMED.

### C. Stash House Enhancement

"A district court's interpretation or application of the Sentencing Guidelines is reviewed de novo, and its factual findings . . . are reviewed for clear error. There is no clear error if the district court's finding is plausible in light of the record as a whole." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). Section 2D.1.1(b)(12) requires a two-level increase if the defendant "maintained a premises for the purpose of

manufacturing or distributing a controlled substance." The guideline comments state that "[a]mong the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." These factors are not necessarily determinative alone. *United States v. Chagoya*, 510 F. App'x. 327, 328 (5th Cir. 2013).

Appellant essentially suggests that possessory interest must be an element considered when determining whether a premises was maintained for the purpose of manufacturing or distributing a controlled substance. This argument focuses on one factor, possessory interest, which is an incorrect analysis as this court considers multiple factors as part of its analysis. The Fifth Circuit agrees with the First Circuit that "it would defy reason for a drug dealer to be able to evade application of the enhancement by the simple expedient of maintaining his stash house under someone else's name." *United States v. Jones*, 778 F.3d 375, 385 (1st Cir. 2015); *see also United States v. Guzman-Reyes*, 853 F.3d 260, 265 (5th Cir. 2017). In *United States v. Rodney*, 532 F. App'x. 465, 472 (5th Cir. 2013), this Court affirmed the district court's holding that "testimony established that [Rodney] had unimpeded access to the shed and was observed retrieving drugs from it on multiple occasions. Also, [Rodney] stored, packaged, and retrieved drugs from the shed, and controlled the activities at the shed."

The presentence investigation report established that officers observed Broussard visiting the stash house multiple times, that Broussard freely entered and exited the stash house, was by himself "90 percent of the time," and was present when other people visited. "We have held that unrestricted access to a premises indicates a 'level of access, dominion, and control' that 'suffices to support a maintenance finding under the deferential clear error standard.'" *United States v. Slider*, 833 F. App'x 587, 589 (5th Cir. 2021) (quoting *Guzman-Reyes*, 853 F.3d 260 at 264). Broussard and Issac Andrus were involved in a transactional agreement that involved couriering drugs in return for money. A factor considered in deciding whether the defendant maintained the stash house is whether there was an exchange with the owner of the premises to facilitate drug transactions or storage.

10

*Guzman-Reyes*, 853 F.3d 260 at 264-65 (considering the fact that Guzman paid Campbell, the owner, $1,000 worth of drugs in exchange for use of the premises).

Accordingly, the district court's two-level enhancement under U.S.S.G. § 2D1.1(b)(12) is AFFIRMED.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of the motion to suppress and Defendant's sentencing in all respects.