# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 10, 2022

Lyle W. Cayce
Clerk

No. 21-20043

United States of America,

*Plaintiff—Appellee*,

*versus*

Victor Bernard Henry,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
No. 4:18-cr-719-1

Before Higginbotham, Higginson, and Oldham, *Circuit Judges*.
Per Curiam:

This case arises from a denial of a motion to suppress evidence obtained twenty-six minutes into a traffic stop. We affirm.

**I.**

On February 22, 2018, Texas Department of Public Safety ("DPS") Agent Andrew Papanos spoke with a street-level heroin dealer about his supplier. The dealer provided the supplier's nickname, "Casper," and a physical description: a heavyset Black male with yellow or blond dreadlocks who drove a black sports car, which may have been specifically identified as

No. 21-20043

a Chevrolet Camaro. At Papanos' direction, the dealer ordered heroin from Casper, which was delivered by Meagan Green, who was then arrested.

At about 11:30 p.m. on February 24, 2018, Papanos was parked at a gas station when he saw someone resembling Casper. As the suspect drove a black sports car (Dodge Challenger) away from the gas station, Papanos maintained surveillance and observed the suspect throw a lit cigarette out the car window, which is an offense. Papanos radioed to have a trooper try to make a traffic stop, specifically contacting DPS Troopers Mackenzie Brown and Dannie Gutierrez, requesting they stop the suspect's car. The troopers tracked the suspect and observed the car speeding (going 68 mph in a 65-mph zone) and driving on the shoulder of the highway in violation of state law. Brown initiated a traffic stop and made contact with Victor Bernard Henry while Papanos pulled up behind.

Brown ordered Henry out of the vehicle. After obtaining Henry's driver's license, Brown entered Henry's information into his patrol car's computer and learned that Henry was driving with a suspended license, an arrestable offense. Meanwhile, Papanos went to Brown's patrol car to explain his suspicion of drug trafficking. Brown then asked Henry for consent to search the vehicle, which he gave. Before turning to the car, Brown frisked Henry and noticed a large bulge in his shorts pocket; he asked Henry to pull out whatever was causing the bulge. Henry pulled out a large wad of cash, which he said was $3,200.

When other DPS Criminal Investigations Division ("CID") agents arrived and began to search the vehicle, Brown returned to his car to write a citation for Henry's driving with a suspended license. The CID agents found bail bond paperwork for Meagan Green in Henry's car. Papanos told Brown that he believed Henry was Casper because Meagan Green had been arrested for heroin delivery that came from Casper. After Papanos asked Brown if they

2

No. 21-20043

had a basis to arrest Henry, Brown explained that the suspended license justified arrest. Within minutes of this conversation, a CID agent opened the hood of Henry's car and found a t-shirt containing 400 grams of heroin. Papanos then arrested Henry.

Henry moved to suppress all evidence seized during the February 24, 2018 traffic stop. After a hearing, the district court denied Henry's motion to suppress. Henry conditionally pled guilty to possession with intent to distribute 100 grams or more of heroin, reserving his right to appeal the district court's order on the motion to suppress. Henry timely appealed.

## II.

On appeal of a motion to suppress ruling, we review factual findings for clear error and conclusions of law *de novo*.[1] The denial of a suppression motion will be upheld if there is any reasonable view of the evidence to support the denial.[2]

## III.

In an analytical framework inspired by principles discussed in *Terry v. Ohio*,[3] we review the legality of police investigatory stops in a two-part test.[4] We first examine whether the officer's action was justified at its inception and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop.[5] As to the first part, the traffic stop was valid on three bases: Henry (1) littered a cigarette in

---

[1] *United States v. Kendrick*, 980 F.3d 432, 439 (5th Cir. 2020) (en banc).

[2] *United States v. Gratkowski*, 964 F.3d 307, 310 (5th Cir. 2020).

[3] 392 U.S. 1 (1968).

[4] *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004).

[5] *Id*.

No. 21-20043

violation of Texas Health and Safety Code § 365.012(a), (2) sped, and (3) drove on the shoulder of the highway in violation of Texas Transportation Code § 545.058.

As to the second part, the district court stated the continuance of the traffic stop was justified because Henry drove with a suspended license and was a suspect in an ongoing drug trafficking investigation. We agree. A detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges.[6] The question before this Court, then, is whether Brown's actions after he stopped Henry and before the heroin was found were reasonably related to the circumstances that justified the stop, or to dispelling his reasonable suspicion developed during the stop.[7] Approximately three minutes into the stop, Brown found that Henry's license was suspended. There is no constitutional impediment to a law enforcement officer's request to examine a driver's license during a traffic stop and run a computer check.[8] At this point, Brown could have arrested Henry for driving with a suspended license. Moreover, Brown developed reasonable suspicion that Henry was involved in the sale of heroin as the stop progressed—Papanos explained to him that Henry matched the description of a drug trafficking suspect.

The "touchstone of Fourth Amendment analysis is reasonableness."[9] Reasonableness requires a balancing of the public interest with an

---

[6] *Id.* at 507.

[7] *Id.*

[8] *Id.* at 507–08.

[9] *Id.* at 507 (internal citations omitted).

No. 21-20043

individual's right to be free from arbitrary intrusions by law enforcement.[10] The Supreme Court has emphasized that courts must allow "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"[11] Brown's suspicion that Henry was a drug dealer known as Casper was reasonable under the Fourth Amendment. Agent Papanos was involved in an ongoing heroin trafficking investigation. Two days earlier, he arrested Meagan Green after she delivered heroin that had been ordered by a cooperating street dealer from his supplier, whom he knew only as Casper. Papanos was on the lookout for Casper, who had been described by the dealer as a heavyset Black male with yellow or blond dreadlocks who drove a black sports car. Papanos conveyed his suspicion to Brown, who prolonged the stop on the basis of reasonable suspicion.[12] The CID agents' discovery of Meagan Green's bond paperwork strengthened this suspicion. Brown made permissible "commonsense judgments and inferences about human behavior" and his own policing experiences.[13] Based on the totality of the circumstances, a reasonable law enforcement officer could conclude that Henry was the source of the heroin that had been delivered by Meagan Green several days earlier, and that he had committed the offense of possession of heroin with intent to distribute.[14]

---

[10] *Id.*

[11] *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

[12] *Brigham*, 382 F.3d at 507.

[13] *See Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) (internal citation omitted).

[14] *Brigham*, 382 F.3d at 507.

No. 21-20043

\* \* \* \*

For the foregoing reasons, we AFFIRM the ruling of the district court.